**[This opinion has been published in *Ohio Official Reports* at 88 Ohio St.3d 480.]**

BAUGHMAN ET AL., APPELLANTS, *v*. STATE FARM MUTUAL AUTOMOBILE
INSURANCE COMPANY, APPELLEE.

[Cite as *Baughman v. State Farm Mut. Auto. Ins. Co.*, 2000-Ohio-397.]

*Civil procedure—Civ.R. 23—Class actions—Class action treatment appropriate,*
*when—Court of appeals' judgment reversing trial court's order granting*
*certification of a class action to challenge certain practices with regard*
*to the sale of uninsured/underinsured motorist coverage reversed.*

(No. 99-556—Submitted February 8, 2000—Decided May 24, 2000.)

APPEAL from the Court of Appeals for Summit County, No. 19087.

_____

{¶ 1} This is an appeal from a decision reversing the trial court's order granting certification of a class action. The action was brought by plaintiffs-appellants, Delmas and Cora Ann Baughman, on behalf of themselves, the estate of their deceased son, Stanley Boddie Baughman, and others similarly situated, against defendant-appellee, State Farm Mutual Automobile Insurance Company ("State Farm"), to challenge certain practices with regard to the sale of uninsured/underinsured motorist coverage.[1]

{¶ 2} The action is predicated on *Martin v. Midwestern Group Ins. Co.* (1994), 70 Ohio St.3d 478, 639 N.E.2d 438, decided October 5, 1994, which invalidated the "other owned vehicle" exclusion in every automobile insurance policy delivered or issued for delivery in Ohio. In *Martin*, the court held that "[a]n automobile liability insurance policy provision which eliminates uninsured motorist coverage for persons insured thereunder who are injured while occupying

_____

1. Delmas Baughman died on March 10, 1999. On September 29, 1999, we granted appellants' motion to substitute Cora Ann Baughman, Administrator, for Delmas Baughman.

a motor vehicle owned by an insured, but not specifically listed in the policy, violates R.C. 3937.18 and is therefore invalid." *Id.*, paragraph three of the syllabus.

{¶ 3} On April 28, 1995, Stanley Baughman met his untimely death as a result of the negligence of an underinsured motorist. At the time, the Baughmans, who were all residents of the same household, had separate insurance policies issued by State Farm on each of their five owned vehicles. Each policy was purchased or renewed after October 5, 1994, and each provided coverage to the limit of $50,000 per person/$100,000 per accident. A separate premium was charged for the uninsured/underinsured motorist coverage in each policy, and each policy contained an "other owned vehicle" exclusion. It is undisputed that State Farm provided the Baughmans with no information regarding the *Martin* decision or the invalidity of other-owned-vehicle exclusions.

{¶ 4} After filing an underinsured motorist claim with State Farm for the death of their son, and learning that the coverage limits of their respective policies could not be stacked, appellants instituted the present action. In their amended complaint, appellants alleged that "State Farm imposed premiums for UM and UIM coverage it had no intention of providing and, in any event, was of no value and/or conferred no additional benefit and/or coverage to its insureds and/or resident relatives of the households. State Farm has obtained such premiums without effectively and unambiguously communicating to its insureds that only one vehicle in the household need have UM and UIM coverage in order to provide such protection to all resident relatives in the household."

{¶ 5} Based on these underlying allegations, appellants presented the following six claims for relief: (1) "action for return of insurance premiums" based on a failure to disclose, (2) fraud, (3) conversion, (4) unjust enrichment, (5) negligence, and (6) breach of implied covenant or duty of good faith and fair dealing.

**{¶ 6}** On August 28, 1996, appellants moved for class certification pursuant to Civ.R. 23(B)(1), (2), and/or (3). On April 17, 1998, after conducting an evidentiary hearing, the trial court granted certification of a class consisting "of all of State Farm's insured[s] in Ohio who paid multiple premiums for UM and/or UIM coverage, subsequent to October 5, 1994, simultaneously in effect and applicable to the same persons within the same household pursuant to State Farm's practice of charging such persons separate premiums for each insurance vehicle." In so doing, the trial court found that all of the prerequisites of Civ.R. 23(A) had been met, *i.e.*, identifiable class, class membership, numerosity, commonality, typicality, and adequacy of representation, and that appellants satisfied Civ.R. 23(B)(3)'s predominance and superiority requirements.

**{¶ 7}** In the court of appeals, State Farm claimed that the trial court's findings with regard to typicality under Civ.R. 23(A)(3), and predominance and superiority under Civ.R. 23(B)(3), constituted an abuse of discretion.

**{¶ 8}** The court of appeals addressed only the issue of typicality, which it resolved as follows:

"The record reflects that after instituting this action, the Baughmans continued to renew their uninsured motorist coverage on each vehicle. Assuming *arguendo* they were unclear as to their coverage and liability prior to bringing this suit, the Baughmans' [*sic*] had a clear understanding of the state of the law when this action was filed. Their cause of action is based entirely upon the *Martin, supra*, decision. Nonetheless, the Baughmans' [*sic*] contend that it would have been unreasonable to cancel their uninsured motorist policies on their additional cars because they were unsure whether State Farm would be required to provide coverage if an accident occurred. This argument is ethereal and simply lacks merit. The *Martin* decision clearly imposed upon the insurer the obligation to provide coverage under one uninsured motorist policy for all vehicles and resident family members of a household. In light of *Martin*, the trial court found that there was no

express conflict between the Baughmans' claims and those of the putative class. The trial court ascertained that because the Baughmans claimed to have suffered damages as a result of State Farm's sale of duplicative uninsured motorists policies, their claims were typical of the potential class. However, this finding overlooks the critical fact that the Baughmans continued to renew their policies after instituting this action. As a result, the Baughmans' claims, and State Farm's potential defenses, would be unique to their litigation and not representative of those class members who were *unaware* of the change in law and yet continued to purchase multiple policies. Under these facts, the Baughmans' claims and defenses are atypical of the entire class. As such, the Baughmans will be unable to fairly and adequately protect the interests of the putative class members. Thus, the trial court abused its discretion by certifying this case as a class action because the requisite elements of Civ.R. 23 have not been established." (Emphasis *sic*.)

{¶ 9} The cause is now before this court pursuant to the allowance of a discretionary appeal.

_____

*Nurenberg, Plevin, Heller & McCarthy Co., L.P.A., David M. Paris* and *Kathleen J. St. John*; and *Lawrence A. Sutter*, for appellants.

*Baker & Hostetler, L.L.P., Mark A. Johnson* and *Elizabeth A. McNellie*; *Davis & Young* and *Henry A. Hentemann*, for appellee.

_____

**ALICE ROBIE RESNICK, J.**

{¶ 10} The issue presented is whether the trial court abused its discretion in granting class certification. Stated more precisely, the issue is whether the trial court's findings with regard to the satisfaction of either Civ.R. 23(A)(3)'s requirement of typicality or Civ.R. 23(B)(3)'s requirement of predominance and superiority constitute an abuse of discretion.

I

STANDARD OF REVIEW

{¶ 11} Appellants propose that reversing an order of class action certification is a nearly insurmountable burden, requiring a gross, glaring, and almost intentional blunder on the part of the trial court. Appellants also argue that, in any event, "the appellate court *effectively* reversed the trial court's decision using a de novo review, rather than an abuse of discretion standard—an error which, in and of itself, mandates reversal." (Emphasis *sic*.)

{¶ 12} On the other hand, State Farm suggests that a "rigorous analysis" test has come to replace the abuse-of-discretion standard in class certification cases, and argues that "[t]he court of appeals properly found the trial court's analysis to be lacking rigor."

{¶ 13} Apparently the parties have seized certain terminology appearing in *Hamilton v. Ohio Sav. Bank* (1998), 82 Ohio St.3d 67, 70, 694 N.E.2d 442, 447, in an effort to impose a greater burden of review on the court that held in their opponent's favor. However, *Hamilton* established no greater or lesser burdens on trial and reviewing courts in deciding class certification issues than had always been imposed. To the contrary, we adhered to the basic principle that " '[a] trial judge has broad discretion in determining whether a class action may be maintained and that determination will not be disturbed absent a showing of an abuse of discretion.' " *Id.*, quoting *Marks v. C.P. Chem. Co., Inc.* (1987), 31 Ohio St.3d 200, 31 OBR 398, 509 N.E.2d 1249, at the syllabus.

{¶ 14} In so doing, we provided the essential justification and framework for application of that standard, including the rejection of a *de novo* review on appeal, and the requirement that the trial court conduct a rigorous analysis into whether the Civ.R. 23 requirements are satisfied. However, at no point did we elevate the abuse-of-discretion standard to the level of something akin to an "intentional blunder" or lower it to a mere finding that the trial court's analysis is

"lacking rigor." The trial court enjoys the same broad discretion it always had in determining class action certification, and the court of appeals remains bound to affirm that determination absent a showing of an abuse of discretion.

{¶ 15} A careful reading of the court of appeals' opinion in this case reveals that the court did not conduct a *de novo* review of the propriety of class certification. The court of appeals did not merely disagree with the trial court's decision to certify, as appellants suggest, but essentially found it to be unreasonable under the circumstances of this case. Thus, the judgment of the court of appeals will not be reversed solely on the basis that it applied the wrong standard of review.

{¶ 16} On the other hand, the trial court's written decision provides an articulated rationale sufficient to support an appellate inquiry into whether the relevant Civ.R. 23 factors were properly applied and given appropriate weight. Thus, the judgment of the court of appeals will not be affirmed solely on the basis that the trial court abused its discretion in failing to conduct a rigorous analysis, especially since the court of appeals never purported to make such a finding.

II

MODIFICATION OF THE CLASS

{¶ 17} In defining the class as those similarly situated with regard to premiums paid "subsequent to October 5, 1994," the trial court explained that "[t]he triggering date of October 5, 1994, represents the date of the Ohio Supreme Court opinion in *Martin* [*supra*]." As it stands, the period for which payment of premiums determines class membership is open-ended.

{¶ 18} However, appellants now concede that "[t]he period in question ends 9/2/97 due to an amendment to R.C. 3937.18, whereby the legislature superseded this Court's holding in *Martin* and made the 'other owned vehicle' exclusions enforceable once more. R.C. 3937.18(J)(1)." Am.Sub.H.B. No. 261, effective September 13, 1997.

6

{¶ 19} Accordingly, the definition of the class that appellants seek to have certified is hereby modified to this extent.

### III

### TYPICALITY

{¶ 20} Civ.R. 23(A) provides that "[o]ne or more members of a class may sue or be sued as representative parties on behalf of all only if * * * (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class."

{¶ 21} Appellants state that no Ohio court has ever reversed an order of class certification based on a finding that the class representatives failed to meet the typicality requirement. Quoting *In re Disposable Contact Lens Antitrust Litigation* (M.D.Fla.1996), 170 F.R.D. 524, 532, appellants point out that " '[t]he test for typicality, like commonality, is not demanding.' " See, also, *Alpern v. UtiliCorp United, Inc.* (C.A.8, 1996), 84 F.3d 1525, 1540; *Forbush v. J.C. Penney Co., Inc.* (C.A.5, 1993), 994 F.2d 1101, 1106; *Shipes v. Trinity Industries* (C.A.5, 1993), 987 F.2d 311, 316.

{¶ 22} Nevertheless, the requirement of typicality serves the purpose of protecting absent class members and promoting the economy of class action by ensuring that the interests of the named plaintiffs are substantially aligned with those of the class. 5 Moore's Federal Practice (3 Ed.1977) 23-92 to 23-93, Section 23.24[1]. Typicality is a distinct prerequisite to class certification that must be independently satisfied. *Id.* at 23-94.1, Section 23.24[3]; *Hamilton, supra*, 82 Ohio St.3d at 78, 694 N.E.2d at 452. Thus, the typicality requirement "must be taken seriously and cannot be satisfied solely by conclusory allegations." 7A Wright, Miller & Kane, Federal Practice & Procedure (2 Ed.1986) 234-235, Section 1764.

{¶ 23} On the other hand, the court of appeals' insistence that appellants be "identically situated" to the potential class members is too demanding a test for typicality. Certainly the typicality requirement is satisfied when the named

plaintiffs are found to be in a situation "identical to that of putative class members." *Marks, supra*, 31 Ohio St.3d at 202, 31 OBR at 400, 509 N.E.2d at 1253. However, typicality does not require exact identity of claims. "The defenses or claims of the class representatives must be typical of the defenses or claims of the class members. *They need not be identical*." (Emphasis added.) *Planned Parenthood Assn. of Cincinnati, Inc. v. Project Jericho* (1990), 52 Ohio St.3d 56, 64, 556 N.E.2d 157, 166. See, also, 7A Wright, Miller & Kane, *supra*, at 235, Section 1764 (A requirement that "the representatives' claims must be substantially identical to those of the absent class members * * * is too demanding a standard."); 5 Moore's Federal Practice, *supra*, at 23-94, Section 23.24[2] ("[T]he facts and legal theories need not be substantially identical."), and at 23-94.2, Section 23.24[4] ("Typicality does not require a complete identity of claims.").

{¶ 24} As aptly explained in 1 Newberg on Class Actions (3 Ed.1992) 3-74 to 3-77, Section 3.13:

"The rationale for this provision is that a plaintiff with typical claims will pursue his or her own self-interest in the litigation and in so doing will advance the interests of the class members, which are aligned with those of the representative. In such a case, the adjudication of the plaintiff's claim regarding defendant's wrongdoing would require a decision on the common question of the defendant's related wrongdoing to the class generally.

"Typicality determines whether a sufficient relationship exists between the injury to the named plaintiff and the conduct affecting the class, so that the court may properly attribute a collective nature to the challenged conduct. In other words, when such a relationship is shown, a plaintiff's injury arises from or is directly related to a wrong to a class, and that wrong includes the wrong to the plaintiff. Thus, a plaintiff's claim is typical if it arises from the same event or practice or course of conduct that gives rise to the claims of other class members, and if his or her claims are based on the same legal theory. When it is alleged that

the same unlawful conduct was directed at or affected both the named plaintiff and the class sought to be represented, the typicality requirement is usually met irrespective of varying fact patterns which underlie individual claims."

{¶ 25} State Farm proposes, however, that "[t]he claims of class representatives are not typical of the misrepresentation claims of class members under Rule 23(A)(3) when the class representatives did not rely upon the alleged misrepresentation." In support, State Farm argues that "[t]ypicality is not met when the claims of the class representatives are subject to unique defenses," and that "[a]ppellants' lack of reliance on State Farm's non-disclosure of the *Martin* decision would negatively impact the class they allege was uninformed of the decision."

{¶ 26} The essence of this proposition and its supporting arguments is reflected in the following passage contained in State Farm's brief:

"Appellants claim that the class was misled into purchasing multi-vehicle UM coverage by State Farm's failure to disclose the *Martin* decision; yet, Appellants, after they filed this lawsuit and admittedly knew of the *Martin* decision, continued purchasing UM coverage on multiple vehicles. This lack of reliance by Appellants on an alleged omission to disclose by State Farm is a far cry from the class Appellants allege purchased multi-vehicle UM coverage without knowing of the change in the law brought about by the *Martin* decision."

{¶ 27} Generally, a defense of non-reliance is not destructive of typicality. As Newberg explains:

"Similarly, defenses asserted against a class representative should not make his or her claims atypical. Defenses may affect the individual's ultimate right to recover, but they do not affect the presentation of the case on the liability issues for the plaintiff class.

"This view is supported by the principle that the class representative need not show a probability of individual success on the merits, and by the use of the

disjunctive in Rule 23, which refers to 'claims or defenses.' " 1 Newberg on Class Actions, *supra*, at 3-90 to 3-93, Section 3.16.

**{¶ 28}** In particular, "[m]ost courts have rejected any adequacy challenge that the plaintiff or some class members were not actually deceived on the ground that that fact goes to the merits of the individual's right to recover and will not bar class certification." *Id.* at 3-162 to 3-163, Section 3.34.

**{¶ 29}** As further explained in 7A Wright, Miller & Kane, *supra*, at 242-247, Section 1764:

"*Mersay v. First Republic Corporation of America* [ (D.C.N.Y.1968), 43 F.R.D. 465] illustrates this flexible judicial attitude. In that case plaintiff asserted rights on behalf of defrauded shareholders for the overvaluation of certain properties in defendant's prospectus. Plaintiff, unlike most of the class members, actually had profited by the exchange of his shares. Nonetheless, the district court held that Rule 23(a)(3) was satisfied. It stated:

" '[W]hile Mersay's claims may be typical of the class on the question of liability, defendants would deny his claims are in fact typical because Mersay may not be able to prove reliance or damages. This contention goes to individual substantive disputes that should await trial. * * * If Mersay were required to prove his own reliance or damages at this stage, it would follow that no class action could stand until the plaintiff proved every material element of his individual claim. Clearly, such a procedure was not envisioned under rule 23.'

"As the *Mersay* case indicates, plaintiff has satisfied Rule 23(a)(3) if the claims or defenses of the representatives and the members of the class stem from a single event or are based on the same legal or remedial theory. Of course, when this is true the standard under subdivision (a)(3) is closely related to the test for the common-question prerequisite in subdivision (a)(2). On the other hand, Rule 23(a)(3) may have independent significance if it is used to screen out class actions when the legal or factual position of the representatives is markedly different from

that of other members of the class even though common issues of law and fact are raised."

{¶ 30} After reviewing the cases cited by these authorities and by the parties to the present litigation, we too are convinced that, absent some serious discrepancy between the position of the representative and that of the class, the focus at this stage of the proceedings should properly remain on the essential conforming characteristics of the defendant's conduct and the claims arising therefrom. Thus, as we stated in *Hamilton, supra*, "a unique defense will not destroy typicality or adequacy of representation unless it is 'so central to the litigation that it threatens to preoccupy the class representative to the detriment of the other class members.' " *Id.*, 82 Ohio St.3d at 78, 694 N.E.2d at 453, quoting 5 Moore's Federal Practice, *supra*, at 23-126, Section 23.25[4][b][iv], and 23-98, Section 23.24[6].

{¶ 31} Accordingly, we reject the proposition that a finding of typicality is precluded whenever the class representative's reliance on the alleged misrepresentation is called into question. Nor are we dissuaded from this view by State Farm's reliance on *Gary Plastic Packaging Corp. v. Merrill Lynch, Pierce, Fenner & Smith, Inc.* (C.A.2, 1990), 903 F.2d 176. In that securities fraud action, the court affirmed a decision that found plaintiff to be an inappropriate class representative because its claim was subject to the defense that it continued to purchase certificates of deposit through the defendant after discovering the alleged fraud. In so doing, however, the court explained that "[w]hile the fact that Gary Plastic was the only plaintiff to come forward and seek to represent the class weighs in favor of certification, * * * [i]n the factual context presented, we see no abuse of discretion in the district court's refusal to certify a class action." *Id.* at 180. Certainly, there is no indication that the court would have found an abuse of discretion had the trial court's decision been to certify the class.

{¶ 32} Moreover, any doubts about adequate representation, potential conflicts, or class affiliation should be resolved in favor of upholding the class,

11

subject to the trial court's authority to amend or adjust its certification order as developing circumstances demand, including the augmentation or substitution of representative parties. See, *e.g.*, *Basic, Inc. v. Levinson* (1988), 485 U.S. 224, 250, 108 S.Ct. 978, 993, 99 L.Ed.2d 194, 220; *In re Sumitomo Copper Litigation* (S.D.N.Y.1998), 182 F.R.D. 85, 88; *Barkman v. Wabash, Inc.* (D.C.Ill.1987), 674 F.Supp. 623; *Link v. Mercedes-Benz of N. Am., Inc.* (C.A.3, 1986), 788 F.2d 918, 929; *Green v. Wolf Corp.* (C.A.2, 1968), 406 F.2d 291, 298. See, generally, 2 Newberg on Class Actions, *supra*, at 7-82, Section 7-24; 7A Wright, Miller & Kane, *supra*, at 288, Section 1765.

{¶ 33} In this case, appellants allege that State Farm wrongfully charged them separate premiums for uninsured/underinsured motorist coverage on each of their vehicles without disclosing that only one vehicle in the household need have uninsured/underinsured motorist coverage in order to provide such protection to all resident relatives, regardless of which vehicle they may be occupying when injured. In addition, appellants allege that the policies they purchased all contained other-owned-vehicle exclusions, as well as a provision stating that policy terms could only be changed by an endorsement signed by one of State Farm's executive officers. These allegations form the essential gravamen of appellants' six claims for relief. These claims arise from the same alleged wrongful practice and course of conduct that forms the claims of the class, and they are based on the same legal theories as those of the other class members. In attempting to establish liability, it appears that appellants will introduce evidence showing State Farm's past practice of informing its insureds of changes in the law bearing on coverage or policy terms, particularly those wrought by judicial decision that affected other-owned-vehicle exclusions, its failure to inform of *Martin* or the invalidity of the other-owned-vehicle exclusion, and the presence of the integration clause in their policies. This is the same kind of evidence that all class members would be required to present in support of their claims. Thus, the adjudication of appellants' claims against State

Farm would necessarily involve a determination of State Farm's liability to the class generally, thereby aligning appellants' litigation interests with those of the class.

{¶ 34} At this point, it appears that appellants' central focus in this litigation will be on establishing liability, rather than fending off State Farm's defense of non-reliance. Judging from the testimony presented at the certification hearing and the arguments presented in this appeal, it seems evident that appellants intend to show that their reasons for continuing to purchase multi-vehicle uninsured/underinsured motorist coverage after filing suit were other than to obtain additional coverage for guest passengers, as State Farm claims. These reasons involve more than simply being unsure of coverage, as the court of appeals found, and in any event involve substantive issues of merit that should not be resolved at this stage of the proceedings. It also appears that, in countering this defense, appellants intend to rely substantially on the same evidence to be used in establishing liability. If at any point appellants' preoccupation with this defense to the detriment of other class members becomes manifest, then the trial court may consider conditioning its order of certification on the addition of at least one plaintiff who could assert the class claims unburdened by this particular issue.

{¶ 35} Accordingly, we find no abuse of discretion in the trial court's determination of typicality, and the judgment of the court of appeals is reversed as to this issue.

IV

PREDOMINANCE

**{¶ 36}** As an alternative basis on which to affirm the judgment of the court of appeals, State Farm argues that the trial court abused its discretion in finding common issues to predominate over those issues affecting only individual class members under Civ.R. 23(B)(3).

**{¶ 37}** As relevant here, Civ.R. 23(B)(3) provides that a class action is maintainable if, in addition to the prerequisites of subdivision (A), "the court finds that the questions of law or fact common to the members of the class predominate over any questions affecting only individual members."

**{¶ 38}** "Predominance is a test readily met in certain cases alleging consumer or securities fraud or violations of the antitrust laws." *Amchem Prod., Inc. v. Windsor* (1997), 521 U.S. 591, 625, 117 S.Ct. 2231, 2250, 138 L.Ed.2d 689, 713. As we explained in *Hamilton, supra*, 82 Ohio St.3d at 80, 694 N.E.2d at 454:

"In this case, the questions of law and fact which have already been shown to be common to each respective subclass arise from identical or similar form contracts. The gravamen of every complaint within each subclass is the same and relates to the use of standardized procedures and practices. No individual has attempted to institute a parallel action or to intervene in this action, and it is unlikely that any new suits will be filed given the relatively small individual recoveries and the massive duplication of time, effort, and expense that would be involved. While the class is numerically substantial, it is certainly not so large as to be unwieldy. Class action treatment would eliminate any potential danger of varying or inconsistent judgments, while providing a forum for the vindication of rights of groups of people who individually would be without effective strength to litigate their claims. This appears to present the classic case for treatment as a class action, and cases involving similar claims or similar circumstances are routinely certified as such." (Citations omitted.)

**{¶ 39}** In *Cope v. Metro. Life Ins. Co.* (1998), 82 Ohio St.3d 426, 429-430, 696 N.E.2d 1001, 1004, we further explained:

"It is now well established that 'a claim will meet the predominance requirement when there exists generalized evidence which proves or disproves an element on a simultaneous, class-wide basis, since such proof obviates the need to examine each class member's individual position.' *Lockwood Motors, Inc. v. Gen. Motors Corp.* (D.Minn.1995), 162 F.R.D. 569, 580.

" * * *

"Courts generally find that the existence of common misrepresentations obviates the need to elicit individual testimony as to each element of a fraud or misrepresentation claim, especially where written misrepresentations or omissions are involved. They recognize that when a common fraud is perpetrated on a class of persons, those persons should be able to pursue an avenue of proof that does not focus on questions affecting only individual members. If a fraud was accomplished on a common basis, there is no valid reason why those affected should be foreclosed from proving it on that basis. * * *

"Courts also generally find that a wide variety of claims may be established by common proof in cases involving similar form documents or the use of standardized procedures and practices." (Citations omitted.)

**{¶ 40}** Despite the obvious presence of these certifying factors in the instant case, State Farm argues, as did the defendants in *Hamilton* and *Cope*, that individualized proof is necessary to establish the element of reliance (or the defense of non-reliance). In support, State Farm posits two levels of questions affecting only individual class members. First, State Farm suggests that individual determinations must be made as to whether each class member was aware of the change in law brought about by *Martin*, either by virtue of having been told by State Farm's agents or having acquired such information independently. Second, State Farm claims that individual proof is necessary to determine whether each class

member, regardless of his or her knowledge of *Martin*, would have purchased uninsured/underinsured motorist coverage on multiple vehicles anyway, since separate coverage provides the additional benefit of protecting guest passengers.

{¶ 41} Appellants, however, are not obliged to proceed in accordance with State Farm's vision of how their claims should be tried. In *Hamilton*, we explained that "class action treatment is appropriate where the claims arise from standardized forms or routinized procedures, notwithstanding the need to prove reliance," and recognized that "proof of reliance * * * may be sufficiently established by inference or presumption." *Id.*, 82 Ohio St.3d at 84, 694 N.E.2d at 456. In *Cope*, we explained that "[i]t is not necessary to establish inducement and reliance upon material omissions by direct evidence. When there is nondisclosure of a material fact, courts permit inferences or presumptions of inducement and reliance. Thus, cases involving common omissions across the entire class are generally certified as class actions, notwithstanding the need for each class member to prove these elements." *Id.*, 82 Ohio St.3d at 436, 696 N.E.2d at 1008.

{¶ 42} In *Levinson, supra*, 485 U.S. at 245, 108 S.Ct. at 990-991, 99 L.Ed.2d at 217, the high court explained:

"Presumptions typically serve to assist courts in managing circumstances in which direct proof, for one reason or another, is rendered difficult. * * * Requiring a plaintiff to show a speculative state of facts, *i.e.*, how he would have acted if omitted material information had been disclosed, * * * or if the misrepresentation had not been made, * * * would place an unnecessarily unrealistic evidentiary burden on the * * * plaintiff * * *.

"Arising out of considerations of fairness, public policy, and probability, as well as judicial economy, presumptions are also useful devices for allocating the burdens of proof between parties." (Citations omitted.)

{¶ 43} Thus, if appellants can establish by common proof and/or form documents that State Farm misrepresented the validity of the other-owned-vehicle

exclusion, or that State Farm was required and failed to disclose the effect of *Martin*, then at least a presumption of reliance would arise as to the entire class, thereby obviating the necessity for individual proof on this issue. Such a presumption would stand in place of individual testimony disavowing knowledge of *Martin* and displant any unrealistic evidentiary requirement that each class member take the stand and speculate whether, with full knowledge of *Martin*, he or she would have paid the extra premiums to obtain coverage for guest passengers.

**{¶ 44}** Of course State Farm may rebut the presumption by showing a desire for multi-vehicle coverage despite actual knowledge of *Martin*, but not on a class-wide basis. It is undisputed that no formal notice was circulated generally among State Farm policyholders informing them of the invalidity of the other-owned-vehicle exclusions in their policies. Instead, State Farm has confined itself to proving non-reliance on an individual basis. At the certification hearing below, one of State Farm's agents testified that he had discussed the impact of *Martin* with policyholders at "family insurance checkups," and that "about half a dozen" policyholders had called him to inquire specifically about the *Martin* decision. Appellants strenuously dispute the veracity of this testimony, presenting common arguments that might eventually serve to justify the creation of a subclass consisting of those persons to whom State Farm allegedly imparted information about *Martin*. However, no policyholder allegedly possessing such information has yet been identified by name, and any attempt at this point to evaluate the nature or extent, or even the existence, of individual questions affecting this potential group, or their impact on the class generally, would rest on pure speculation.

**{¶ 45}** Thus, as the high court held in *Levinson, supra*, 485 U.S. at 250, 108 S.Ct. at 993, 99 L.Ed.2d at 220, the trial court's "certification of the class here was appropriate when made but is subject on remand to such adjustment, if any, as developing circumstances demand."

**{¶ 46}** Accordingly, the judgment of the court of appeals is reversed, and the cause is remanded to the trial court for further proceedings.

*Judgment reversed*

*and cause remanded.*

MOYER, C.J., DOUGLAS, F.E. SWEENEY and PFEIFER, JJ., concur.

COOK and LUNDBERG STRATTON, JJ., concur separately.

————————————

**COOK, J., concurring.**

**{¶ 47}** While I concur with the reasoning and judgment of the majority, I nonetheless believe that this case did not merit the attention of the court and was, therefore, improvidently allowed. According to Section 2, Article IV of the Ohio Constitution, this court sits to settle the law, not to settle cases. Our exercise here offers no more than "error correction" regarding the application of settled law to the facts of this case.

LUNDBERG STRATTON, J., concurs in the foregoing concurring opinion.

————————————