OPINION
On June 11, 1997, Kaira Rouda filed a lawsuit against Stanley Steemer International, Inc. ("Stanley Steemer"), Wesley Bates, Philip Ryser and Jonathon Pucci. She sought to have the action certified as a class action, but the trial court refused the certification. She has now pursued a direct appeal since R.C.2505.02 defines "an order that determines that an action may not be maintained as a class action" as a final order for purposes of immediate appeal.
Ms. Rouda assigns four errors for our consideration:
Assignment of Error No. 1
 The trial court committed an abuse of discretion by denying class certification based on an alleged failure to show adequacy of counsel.
Assignment of Error No. 2
 The trial court abused its discretion by finding that the named plaintiff is not a member of the proposed class.
Assignment of Error No. 3
 The trial court committed an abuse of discretion by denying class treatment under Civil Rule 23(B)(2).
Assignment of Error No. 4
 The trial court committed an abuse of discretion by refusing to certify a class pursuant to Civil Rule 23(B)(3).
At issue are the terms and conditions of Civ.R. 23(A) and (B) which read:
(A) Prerequisites to a class action
 One or more members of a class may sue or be sued as representative parties on behalf of all only if (1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class.
 (B) Class actions maintainable
An action may be maintained as a class action if the prerequisites of subdivision (A) are satisfied, and in addition:
 (1) the prosecution of separate actions by or against individual members of the class would create a risk of
 (a) inconsistent or varying adjudications with respect to individuals members of the class which would establish incompatible standards of conduct for the party opposing the class; or
 (b) adjudications with respect to individual members of the class which would as a practical matter be dispositive of the interests of the other members not parties to the adjudications or substantially impair or impede their ability to protect their interests; or
 (2) the party opposing the class has acted or refused to act on grounds generally applicable to the class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the class as a whole; or
 (3) the court finds that the questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy. The matters pertinent to the findings include: (a) the interest of members of the class in individually controlling prosecution or defense of separate actions; (b) the extent and nature of any litigation concerning the controversy already commenced by or against members of the class; (c) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; (d) the difficulties likely to be encountered in the management of a class action.
Based upon the requirements of Civ.R. 23, the trial court conducted an analysis of seven factors. Those seven factors as set forth by the Supreme Court of Ohio in Hamilton v. Ohio Sav.Bank (1998), 82 Ohio St.3d 67, 71 are:
PREREQUISITES TO A CLASS ACTION
The following seven requirements must be satisfied before an action may be maintained as a class action under Civ.R. 23: (1) an identifiable class must exist and the definition of the class must unambiguous; (2) the named representatives must be members of the class; (3) the class must be so numerous that joinder of all members is impracticable; (4) there must be questions of law or fact common to the class; (5) the claims or defenses of the representative parties must be typical of the claims or defenses of the class; (6) the representative parties must fairly and adequately protect the interests of the class; and (7) one of the three Civ.R. 23(B) requirements must be met. Civ.R. 23(A) and (B); Warner v. Waste Mgt., Inc. (1988),36 Ohio St.3d 91, 521 N.E.2d 1091.
If any of the prerequisites is not present, the trial court must refuse certification. The trial court here found several of the prerequisites not to have been demonstrated.
In the first assignment of error, appellant questions the trial court's finding regarding the proof of counsel as capable of handling such complex litigation. The trial court wrote:
 With regards to this issue, Plaintiff's motion merely states, without evidentiary support, "the attorneys for the Class are well-respected members of their communities, have regularly engaged in major complex litigation and have an extensive experience in class action law suits." There is no discussion (much less evidence presented) regarding counsel's experience or lack of experience in employment discrimination and sexual harassment litigation. Thus, Plaintiff has failed to meet her burden of proof on the issue of adequacy.
Attorneys familiar with the law firm of Murray Murray Co., LPA ("the Murray firm") are well aware of their expertise in handling complex litigation. Perhaps because the firm is so well known and respected in Northern Ohio, some members of the firm are not aware that their fame has not become commonly known by the bench and bar of central Ohio. Judges in central Ohio who have spent most of their career handling criminal matters in particular are less likely to be aware of and to take judicial notice of the Murray firm's expertise than are judges whose careers have included significant work in the field of torts. Even those who are familiar with the firm might not know about the extent of the firm's practice in gender discrimination cases, as opposed to other areas of tort law.
We, therefore, do not fault the trial judge for his lack of familiarity with the Murray firm and his failure to take judicial notice of their ability to handle litigation such as that presented here.
We note that an evaluation of counsel's expertise is not one of the seven prerequisites set forth in Hamilton. We view the Supreme Court of Ohio's failure to list the ability of legal counsel to be the result of a general presumption that licensed legal counsel are capable of competently handling the lawsuits they file. Only where the ability of counsel to handle the class action is brought into serious question should the trial court engage in a factual determination about the ability of counsel. Defense counsel here did not raise that question, and the trial judge claimed no negative knowledge with respect to the Murray firm. Thus, there was no need for the trial court to attempt to evaluate the Murray firm's ability to manage the litigation.
The underlying principle for the first assignment of error is correctly asserted by the appellant.
The second assignment of error centers on the question of whether or not Kaira Rouda is a member of the class and/or can adequately represent the class she seeks to represent.
Ms. Rouda has been an employee of Stanley Steemer International, Inc., on two separate occasions. On the first occasion, she resigned to serve as an independent contractor for public relations matters for Stanley Steemer and others. On the second occasion, she was hired to be head of the marketing department. She rapidly progressed to the position of vice-president of marketing, the position she held with Stanley Steemer when her employment was terminated. Her employment was for less than two years. Her employment all occurred in Ohio and thus was clearly subject to R.C. Chapter 4112. However, many employees of Stanley Steemer are with franchises located in other states where the applicability of Ohio's discrimination statute is more open to question. Given the sole theory set forth in the complaint, certification of a class involving employees in other states may be inappropriate.
In theory, Ms. Rouda could be a representative of a class of female employees in Ohio. However, her employment history with Stanley Steemer is by her own admission somewhat unique. She has not suffered several of the injuries she now alleges to have been suffered by the class she seeks to represent. She advanced to a position with Stanley Steemer which is well beyond the limits she now alleges are in place for female employees of the corporation. Because she held a position in senior management, she had supervisory responsibility over other women who would be members of the class, if the class were certified. Her experience with Stanley Steemer is in many ways not representative of the experience of the other women who work for or have worked for the corporation. In fact, she may have been called upon to enforce some of the company policy she now attacks and she did fire several women during her second period of employment with Stanley Steemer.
The fact that Ms. Rouda is no longer employed by Stanley Steemer is also a fact that the trial court could consider in weighing the appropriateness of class certification. However, the fact of terminated employment is not determinative of the outcome because considering the factor determinative would be an invitation to a corporation which faces a potential class action to consider firing any potential class member.
On the day before appellate argument on Ms. Rouda's case, the Supreme Court of Ohio decided Baughman v. State FarmMut. Auto. Ins. Co. (2000), 88 Ohio St.3d 480. In the Baughman
case, the Supreme Court re-affirmed the abuse of discretion standard for appellate courts which are reviewing a trial court's determination about class certification. The Supreme Court noted that abuse of discretion is less than an "intentional blunder" by a trial court and more than a determination that a trial court's analysis was lacking in rigor.
In the Baughman case, the Supreme Court carefully analyzed the law regarding typicality of claims for purposes of Civ.R. 23(A). The Supreme Court clearly pointed out that claims or defenses need not be identical. The court also cited with approval 1 Newberg on Class Actions (3 Ed. 1992) 3-74 to 3-77, Section 3.13:
 "The rationale for this provision is that a plaintiff with typical claims will pursue his or her own self-interest in the litigation and in so doing will advance the interest of the class members, which are aligned with those of the representative. In such a case, the adjudication of the plaintiff's claim regarding defendant's wrongdoing would require a decision on the common question of the defendant's related wrongdoing to the class generally.
 "Typicality determines whether a sufficient relationship exists between the injury to the named plaintiff and the conduct affecting the class, so that the court may properly attribute a collective nature to the challenged conduct. In other words, when such a relationship is shown, a plaintiff's injury arises from or is directly related to a wrong to a class, and that wrong includes the wrong to the plaintiff. Thus, a plaintiff's claim is typical if it arises from the same event or practice or course of conduct that gives rise to the claims of other class members, and if his or her claims are based on the same legal theory. When it is alleged that the same unlawful conduct was directed at or affected both the named plaintiff and the class sought to be represented, the typicality requirement is usually met irrespective of varying fact patterns which underlie individual claims." Baughman at 485.
The Supreme Court of Ohio also indicated "* * * any doubts about adequate representation, potential conflicts, or class affiliation should be resolved in favor of upholding the class, subject to the trial court's authority to amend or adjust its certification order as developing circumstances demand, including the augmentation or substitution of representative parties. * * *"Id. at 487.
Ms. Rouda described in detail in her deposition what she describes as a "Bubba attitude" at Stanley Steemer. Women, in Ms. Rouda's view, were primarily viewed in terms of their physical attributes and not in terms of their mental ability and creativity. A prevailing view in upper level management, in her opinion, was that women were more suited to domestic duties and/or sexual activity than to upper-level corporate management.
The discovery information in the record makes it difficult to determine how much this "Bubba attitude" benefited Ms. Rouda and how much it harmed her. The indications in the record are that Ms. Rouda, along with being very bright and very creative, is also very attractive physically. Her attractiveness may have made her more desirable as an employee while presenting a challenge to a fair and objective analysis of her marketing expertise.
As noted above, Ms. Rouda's second period of employment lasted less than two years — from April 1995 to February 1997. Her starting salary was $62,500 and she received a bonus of $28,000 to $29,000 despite working only part of the year. Her salary was increased to $72,500 for 1996 and she received a bonus of almost $50,000. She enjoyed virtually all of the benefits of upper-level management during her employment, including trips to Switzerland and Cozumel and a company-paid cruise. She had liberal flexibility on her working hours, being permitted to come to work after her children had gone to school or daycare. She also was permitted to take time for personal matters and to participate frequently in the children's school and daycare activities during what would normally be considered business hours.
Ms. Rouda had hiring and firing responsibility which she used to terminate the employment of other employees, including some employees with longer histories with Stanley Steemer. For instance, one long-term employee, a woman, basically refused to work with Ms. Rouda because the employee believed Ms. Rouda was responsible for getting her supervisor fired. In theory, the woman would be a member of the class of former female employees Ms. Rouda seeks to represent.
Assuming the "Bubba attitude" described by Ms. Rouda exists, the attitude is harmful to capable women who work for Stanley Steemer. However, Ms. Rouda may not be the ideal person to lead the litigation to address the problem. The facts regarding her ability to represent the class are not so clear that we as an appellate court can say that the trial court abused its discretion in refusing certification based upon questions regarding Ms. Rouda's ability to "fairly and adequately protect the interests of the class" and upon questions regarding how typical her claims are vis a vis the other members of the class.
A strong argument can be made that the trial court erred in its assessment of the applicability of Civ.R. 23(B)(2) and (3) to the situation presented by and on behalf of the class Ms. Rouda seeks to represent. However, the fact that the trial court did not abuse its discretion with respect to the findings about Ms. Rouda's ability to represent the class discussed above moots the remaining three assignments of error. Any arguable error on the third and fourth assignments of error does not change the outcome and hence cannot be reversible error.
In sum, we overrule the second assignment of error. Our ruling on the second assignment of error renders the remaining assignments of error moot. As a result, the judgment of the trial court is affirmed.
PETREE and BROWN, JJ., concur.