LAZARUS et al., Appellants,

v.

OHIO CASUALTY GROUP, Appellee.

[Cite as *Lazarus v. Ohio Cas. Group* (2001), 144 Ohio App.3d 716.]

Court of Appeals of Ohio,
Eighth District, Cuyahoga County.

No. 77791.

Decided July 23, 2001.

*Dworken & Bernstein Co., L.P.A., Patrick J. Perotti, Dean M. Rooney* and *Patrick T. Murphy*; *Finelli & Margolis, P.L.L.* and *Ronald A. Margolis*, for appellant.

*Gallagher, Sharp, Fulton & Norman, Thomas E. Dover, Monica A. Sansalone, Timothy J. Fitzgerald* and *Mark J. Savage*, for appellee.

KARPINSKI, Presiding Judge.

Plaintiff-appellant Carol Lazarus appeals the trial court's dismissal of this case for lack of subject matter jurisdiction. Lazarus filed a class action complaint alleging that she and seven hundred and fifty others similarly situated "paid multiple premiums for uninsured/underinsured motorist ["UMI"] coverage, subsequent to October 5, 1994, which was simultaneously in effect and applicable to the same persons in the same household."[1] Complaint at 1.

This claim was based upon the Supreme Court of Ohio's ruling in *Martin v. Midwestern Group Ins. Co.* (1994), 70 Ohio St.3d 478, 639 N.E.2d 438, which eliminated the "other owned vehicle" exclusion for uninsured/underinsured motorist coverage. Prior to *Martin*, injured persons were covered by UMI only if they were in a vehicle covered by UMI coverage. In *Martin*, the Supreme Court of Ohio held that because UMI protects people, not vehicles, coverage followed the insured persons regardless of whether or not they were in a covered vehicle at the time of the accident, as long as they were in a vehicle owned by a relative living in the same household who was the insured person. Therefore, the court held, a family needed coverage on only one vehicle in the household to insure all the relatives living in that household while they were injured riding in any vehicle owned by the insured. The only advantage to carrying UMI on each vehicle was to non-family members.

Appellant alleges that she and others like her were deceived because the insurer never informed them of the change in the law as a result of *Martin*, and they therefore continued to pay for UMI coverage individually on each vehicle of their household when the family in that household would have been covered by paying for only one vehicle. Appellant's complaint contains counts for breach of contract, breach of fiduciary duty, misrepresentation and fraud, negligence, conversion of additional multiple premiums, and unjust enrichment. She requests a declaration and determination of rights.[2]

Claiming that appellant had failed to exhaust her administrative remedies, defendant-appellee insurer filed a motion to dismiss for lack of subject matter jurisdiction. Insurer claims that appellant is complaining about a rate, which is in the exclusive jurisdiction of the Superintendent of Insurance. The insurer

---

**1.** The alleged overpayment period ended September 2, 1997, when the legislature passed R.C. 3937.181, which superseded *Martin v. Midwestern Group Ins. Co.* (1994), 70 Ohio St.3d 478, 639 N.E.2d 438.

**2.** The same plaintiff's attorneys filed a similar action against the same insurance company in *Kolar v. Ohio Cas. Group* (Nov. 9, 2000), Cuyahoga App. No. 77240, unreported, 2000 WL 1679455. *Kolar* was dismissed for lack of standing because the plaintiffs attempting to form a class had not been insured by defendant during the applicable time period.

states, therefore, that until the appellant brings her case before the Ohio Department of Insurance, the common pleas court lacks jurisdiction to hear the matter.

Agreeing with the insurer, the trial court stated in its judgment entry, "defendant Ohio Casualty Group's motion to dismiss plaintiff's complaint is hereby granted on the ground that the court lacks subject matter jurisdiction." The court dismissed the case without prejudice.

Appellant presents one assignment of error[3]:

"Whether the trial court erred in ruling that the court did not have subject matter jurisdiction."

In support of this assignment of error, appellant provides these arguments:

"1. The Superintendent of Insurance does not have exclusive jurisdiction to hear this matter.

"2. Title 39 of the Ohio Revised Code does not require the Ohio Department of Insurance to hear the claims alleged in this case.

"3. The courts have an absolute right to hear claims such as those presented in this case."

### Exclusive Jurisdiction

For its first argument, insurer alleges that the subject matter at issue is in the exclusive jurisdiction of the Superintendent of Insurance because the issues raised are "rate-making" issues. Because the payment in question is part of a premium, insurer argues that the question raised is the rate the insurer charged and that it is, therefore, in the exclusive jurisdiction of the superintendent and not within the jurisdiction of the courts.

Insurer is partially correct: The approval and disapproval of insurance rates submitted by an insurer are within the exclusive jurisdiction of the Superintendent of Insurance. Additionally, if the superintendent finds that there is just cause to question a rate being charged by an insurance company, the superintendent also has the authority to hold hearings. Specifically, R.C. 3937.04(A) states:

"If at any time the superintendent of insurance finds that a rate to which sections 3937.01 to 3937.17 of the Revised Code apply does not comply with such sections, he may, after a hearing * * * issue an order specifying in what respects

---

**3.** Appellant has mistakenly cast her assignment of error in the form of an issue. See App.R. 16(A)(3).

he finds that the rate fails to comply, and stating when, within a reasonable time thereafter, the rate shall no longer be in effect."

Insurer views the plaintiff's claim that insurance was not needed on all the vehicles as a question of allocating premiums and explains as follows:

"[T]he allocation of premiums has no effect on the coverage received by the insured. If, through knowledge and experience, an insurance company finds that the allocation of UM premiums is better achieved on a per vehicle basis, for this is the actual risk encountered, they [*sic*] are free to charge insureds in that manner." Ohio Casualty Group's Motion to Dismiss Plaintiff's Complaint at 10.

Insurer claims that rate-making is the issue in this case and that once the insurer has established its rates, the Superintendent of Insurance determines, pursuant to R.C. 3937.03, whether the rate is acceptable or not. Only the Superintendent of Insurance may review the rates charged, insurer argues, not the court.[4]

Insurer errs, however, in its assumption that appellant's cause of action falls exclusively within the category of rate-making. Lazarus states six causes of action, none of which is exclusively rate-making. The issues raised in these claims focus not on the actual rate charged but rather on the information provided by the insurance company regarding what the rates cover. In other words, the issues are fraud and deceptive practices, unjust enrichment, conversion, breach of contract and fiduciary duty and negligence, not whether the rate charged was acceptable or not.

### No Authority

Appellee further claims that the authority of the superintendent extends to any issue in which an insurance rate or premium is involved. We disagree.

The authority of the Superintendent of Insurance is conferred by R.C. 3901.041, which states as follows:

"The superintendent of insurance shall adopt, amend, and rescind rules and *make adjudications, necessary to discharge the superintendent's duties and exercise the superintendent's powers* * * *." (Emphasis added.)

Appellee fails to demonstrate, however, that all the issues complained of are within the superintendent's duties and powers. Nothing in the statute, for

---

4. Insurer states, "Section 3937 *et seq.* of the Ohio Revised Code regulates the rate setting and premium allocations of insurers known as 'rate-making.' ' Appellee's Brief at 9. Insurer does not cite any division of this section, however, as specifically addressing the allocation of premiums. Rather, insurer states, without any supporting citation, that "[i]t is elementary that the allocation of premiums has no effect on the coverage received by the insured." *Id.* at 11.

example, provides any authority to the superintendent for negligence. Absent the superintendent's express authority over this issue, the court could clearly proceed on appellant's claim of negligence.

## Shared Authority

While the Superintendent of Insurance has jurisdiction over the remaining claims, this jurisdiction is not exclusive. For example, he does not have exclusive jurisdiction over consumer complaints of insurance practices which are unfair or deceptive.

While the superintendent has the authority to intervene to stop the deceptive actions complained of, and even has the authority to order reimbursement of the overcharged premiums, and thus has authority over a portion of some of the claims, the superintendent does not have the authority to award attorney, accountant or auditor fees, costs, or compensatory or punitive damages. The remedies available to the superintendent fall short of what is requested.

The superintendent likewise has jurisdiction over a simple breach of contract case and portions of the remaining non-negligence claims, but only to the extent of ordering reimbursement of wrongly charged moneys. Regarding breach of good faith and fair dealing, the Ohio Supreme Court has expressly held that the courts share jurisdiction. *State ex rel. Banc One Corp. v. Walker*, (1999), 86 Ohio St.3d 169, 712 N.E.2d 742. The superintendent has the authority to investigate unfair or deceptive practices, to order the offending insurer or agent to stop those practices, to discipline the offending insurer or agent by suspending or revoking his license or fining him, and to reimburse the wrongly charged insured with statutory interest.

The superintendent similarly has limited authority over the conversion and unjust enrichment claims. This authority is limited, however, to punishing the offender, stopping the offending conduct, and enforcing restitution. Again, this authority does not extend to awarding attorney, auditor, or accountant fees, compensatory or punitive damages, or costs as requested by appellant.

## PRIMARY JURISDICTION

When authority is shared, the question is whether the superintendent has primary jurisdiction. Case law has interpreted the statutes to sometimes confer primary jurisdiction to the superintendent over an issue. Under this doctrine the superintendent is allowed to establish policy concerning a narrow issue prior to court review. "The doctrine of primary jurisdiction comes into play

if the use of administrative proceedings will contribute to a meaningful resolution of the lawsuit. If it will, the trial court should defer any action until that determination is made by the agency." *Salvation Army v. Blue Cross & Blue Shield of N. Ohio* (1993), 92 Ohio App.3d 571, 576, 636 N.E.2d 399, 402.

Appellant has requested "a declaration and determination of the rights, liabilities and obligations pursuant to Rule 57 of the Ohio Rules of Civil Procedure and Revised Code Chapter 2711, including but not limited to a declaration that the conduct by the defendant is improper for some or all of the reasons set forth above, and an assessment and recovery of attorney fees." Complaint, count seven. The superintendent has the authority to declare the insurer's conduct improper, to stop the conduct, and to reimburse the insured the amount overcharged with statutory interest.[5]

But appellant in the case at bar is also seeking monetary compensation over and above the allegedly overcharged premiums plus interest. See Complaint. The Department of Insurance has the authority, however, to order the return only of the original overpayment, which might be a small part of the damages requested by appellant if her request for punitive damages is granted.

As noted above, moreover, appellant is not required to bring a small portion of its claims to the Superintendent of Insurance before bringing its whole claim to the court. As the Supreme Court of Ohio said, "potential referral of an issue to an administrative agency under the primary jurisdiction doctrine where an action is filed does not deprive the court of jurisdiction over the matter so as to require dismissal of the case." *Banc One Corp. v. Walker* (1999), 86 Ohio St.3d 169, 171, 712 N.E.2d 742, 745.[6] Rather than dismiss the case, the proper procedure is for the trial court to stay the case and refer to the office of superintendent those issues which the superintendent can help resolve. After that office has resolved

---

**5.** Under insurer's rate-making theory, the only power the superintendent has in this case is to "issue an order specifying in what respects he finds that the filing fails to comply and stating when, within a reasonable period thereafter, the filing shall no longer be effective." R.C. 3937.04(B). Under the alternative unfair or deceptive acts theory, the superintendent "may order [the insurer] to return any payments received by such person as a result of the violation" with statutory interest. R.C. 3901.22(D)(3) and (4). Also,

"[H]e may * * * request the attorney general to commence and prosecute any appropriate action or proceeding in the name of the state against such person.

"Such action may include * * * the commencement of a class action under Civil Rule 23 on behalf of policy holders * * * for damages caused by or unjust enrichment received as a result of the violation." R.C. 3901.22(E).

**6.** *Banc One* involved claims of breach of good faith and fair dealing. For issues which are within the special expertise of the administrative agency, "the judicial process is suspended pending referral of the issues to the administrative body for its view." *Id.*

the issues that are within its jurisdiction, the case should return to the trial court for adjudication of any remaining matters.

Although R.C. 3937.181 already has put an end to the allegedly objectionable acts, there are other issues the insurance department could address.[7] It can, for example, determine the respective rights and obligations of the parties if the trial court decides that the superintendent is equipped to do so. If this route is chosen, the trial court afterwards can address the remaining issues. However, if the trial court determines that the superintendent cannot provide meaningful assistance with any of the issues, it need not send any issues to the superintendent. Regardless of whether the court decides to refer some issues or to keep all the issues for itself, the negligence issue rests solely with the trial court. As with the defamation claim in *Salvation Army*, "[t]o require appellant to first bring its [negligence] claim before the Superintendent of Insurance would be to require a vain act." *Salvation Army* at 579, 636 N.E.2d at 404.

## CONCLUSION

After reviewing the applicable statutes, we hold that the common pleas court has subject matter jurisdiction over the case at bar.

*Judgment reversed*
*and cause remanded.*

Timothy E. McMonagle and Anne L. Kilbane, JJ., concur.

---

7. Appellant primarily relies on the argument that the Supreme Court of Ohio implicitly ruled that the courts do have subject matter jurisdiction because it ruled on an issue in *Baughman v. State Farm Ins. Co.* (2000), 88 Ohio St.3d 480, 727 N.E.2d 1265, without stating that it lacked subject matter jurisdiction. The primary issue in *Baughman* is the same as the issue in the instant case. Appellant argues that because a court may not rule on a case when it lacks jurisdiction, the Supreme Court was implicitly saying that it did have jurisdiction over this issue. We decline to take that leap of logic concerning the court's intent.