Miles et al., Appellants, *v.* N. J. Motors et al., Appellees.

(No. 7200—Decided August 4, 1972.)

*Mr. Russell A. Kelm, Mr. R. Michael Frank, Mr. Frank S. Merritt, Mr. Joseph F. Vargyas, Mr. Earl H. Staelin* and *Mr. Paul L. Geller* and *Mr. Paul J. Lehy,* of counsel, for appellants.

*Mr. Arthur F. James* and *Mr. Eugene F. Howard, Jr.,* for appellees.

BROWN, J.  Plaintiffs brought this action pursuant to Ohio Civil Rule 23 (hereinafter referred to as Rule 23), seeking legal and equitable relief from the corporate defendant, N. J. Motors, Inc., and three individuals acting in the capacity of agents for the corporation.  The complaint alleges that the seven named plaintiffs and the class they represent are the victims of fraudulent commercial practices utilized by defendants in conducting a used car sales business.

Plaintiffs contend that each member of the class purchased an automobile on credit from the defendants and that the buyers were required to make weekly or semi-monthly payments directly to the defendants.  The practice of requiring weekly or semi-monthly payments is characterized by the plaintiffs as a deliberate attempt on the part of defendants to "promote a default."  After a default by the purchasers, the defendants allegedly repossessed the collateral in each case as provided by R. C. 1309.46, without the issuance of judicial process.  Thereupon, the plaintiffs claim that in every instance the defendants sold the automobile to themselves at a "private sale" for an arbitrary and deflated price.  This fraudulent scheme was purportedly consummated when defendants obtained a cognovit deficiency judgment against each individual consumer for the difference between the contract price and the depressed price obtained for the collateral at the "private sale."

It would be premature to discuss the merits of the plaintiffs' contentions in detail at this time. However, a brief resume of the theories upon which the plaintiffs base their claims for relief is essential to the understanding of the issues presently before the court.

The plaintiffs argue that the secured party, N. J. Motors, Inc., violated R. C. 1309.47 (C) in its dealings with the representative parties and the class by failing to conform to the standard of commercial reasonableness in disposing of the collateral at private sales. It is further alleged that certain terms contained in the security agreement signed by all members of the class are repugnant to the provisions of the Uniform Commercial Code, as adopted in Ohio. Moreover, the complaint challenges the constitutionality of the cognovit note provisions of Ohio law. Finally, the validity of R. C. 1309.46 is attacked on the grounds that the statute authorizes repossession of collateral without notice or a prior judicial hearing in contravention of the federal and Ohio constitutions.

The trial court granted the defendants' motion to strike the constitutional allegations without leave to amend and entered a final judgment for the defendants. The trial court further found that the case was not maintainable as a class action as a matter of law and entered a final judgment dismissing that part of the complaint pertaining thereto. The legal effect of the trial court's order granting the motion to strike without leave to amend is similar to the granting of a demurrer without leave to amend under the former practice in Ohio. See, Advisory Committee Staff Notes to Rule 12(F). The order of the trial court entering a final judgment of dismissal with regard to the class action aspects of the case also raises questions of law. Thus, if the order of dismissal is a final appealable order, we must determine whether the instant cause is maintainable as a class action as a matter of law on the basis of the facts stated in the complaint. For the purposes of this appeal, the "facts" stated in the complaint are assumed to be true. *Green* v. *Wolf Corp.* (C. C. A. 2, 1968), 406 F. 2d 291 at 294; *Siegel* v. *Chicken Delight, Inc.* (N. D. Cal. 1967), 271 F. Supp. 722 at 725. Of course, we express no opinion

with regard to what the evidence will ultimately show in the instant case.

(A) The Constitutional Challenges To The Repossession And Cognovit Note Provisions Of Ohio Law

The defendants stipulated in their brief and in oral argument before this court that the constitutional "allegations include assertions of fact which require an evidentiary hearing before (such claims) can be intelligently discussed and decided." We hold, without reaching the merits, that the trial court erred in granting the defendants' motion to strike the constitutional claims without first conducting an evidentiary hearing. Assignment of errors numbers 1 and 2 are well taken to that extent.

An additional reason to support the foregoing conclusion is that the action, *inter alia*, is for declaratory judgment relief. Allegations in a declaratory judgment action are proper which assert pursuant to R. C. 2721.03 that property rights of plaintiffs are directly affected by a statute or statutes and that a declaratory determination is required as to the constitutionality of such statutes. *Wilson* v. *Cincinnati* (1960), 171 Ohio St. 104; 16 Ohio Jurisprudence 2d 602, Declaratory Judgments, Section 18. It was error, therefore, to strike paragraphs 104 through 115 from the complaint.

(B) The Trial Court's Dismissal Of The Class Action

(1) *The Finality Of The Order Dismissing The Class Action*

The threshold question before this court is whether the order dismissing the class action is a final appealable order. An order entered by the trial court striking class action allegations while at the same time permitting the named plaintiffs to proceed individually has been held to be a final appealable order in those situations where the named plaintiffs' claim is so small that the order would sound the "death knell" of the litigation. *Eisen* v. *Carlisle & Jacquelin* (C. C. A. 2, 1966), 370 F. 2d 119; *Green* v. *Wolf Corp.*, *supra* at 295, note 6.

In the instant case, the fact that an institutional advocate is prosecuting the action on behalf of the named plaintiffs precludes the notion that a dismissal of the class action

would be the "death knell" of the individual claims. Presumably, the institutional advocate has the financial resources to conduct the litigation even if this court refuses to review the trial court's dismissal of the class action at this juncture. However, in considering the finality of the order dismissing the class action, the effect which the dismissal will have on the plaintiffs' financial ability to proceed with the litigation is not the only consideration which must be carefully weighed. Several other factors militate in favor of a decision to review the order of the trial court at this time. For example, the members of the alleged class represented by the named plaintiffs in the case at bar will be without legal counsel as a result of the trial court's decision and the statute of limitations will continue to run on their claims. In addition, the fact that the order of the trial court striking the class action will not merge in a final judgment on the merits could prevent a fair disposition of this litigation.

If the named plaintiffs are successful on the merits in the court below, the members of the alleged class would not be privy to the judgment as a result of the trial court's earlier decision dismissing the class action. The representative parties, by appealing the dismissal at this time, have afforded this court an opportunity to avoid the additional suits necessary to protect the interests of the individuals excluded by the trial court's initial order. Likewise, a judgment on the merits in favor of only the named plaintiffs in the court of common pleas, if subsequently coupled with an order of this court affirming the lower court's decision as to the substantive claims, but ordering the trial court to reinstate the class action, could result in prejudice to the defendant. In such a situation, this court would remand the case to the court of common pleas to determine the size of the class and for execution of the judgment. Those individuals found by the trial court to be members of the class would be included in the judgment already rendered in their favor because of the *res judicata* effects of a judgment in a case maintained as a class action. See Rule 23(C)(3) and, generally, Note, Interlocutory Appeal from Orders Striking Class Action Allega-

tions, 70 Col. L. Rev. 1292 (1970). We hold that "the requirement of finality be given a practical rather than a technical construction" and that the order of the trial court dismissing the class action is a final order reviewable at this juncture in the litigation. *Gillespie* v. *U. S. Steel Corp.* (1964), 379 U. S. 148 at 152.

(2) *The Requirements Of Rule 23A*

Subsection (A) of Rule 23 contains four necessary conditions that must be fulfilled if a suit is to be properly maintained as a class action. Pursuant to Rule 23(A), one or more of the members of a class may sue or be sued as a representative on behalf of all only if (1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class and, (4) the representative parties will fairly and adequately protect the interests of the class. In addition to these four prerequisites, at least one of the requirements of subsection (B) of Rule 23 must be satisfied. *Green* v. *Wolf Corp.* (1968), 406 F. 2d 291 at 298.

The complaint states that the action is brought on behalf of all natural persons against whom the defendants have obtained a cognovit deficiency judgment following the repossession of a motor vehicle. Specifically, the plaintiffs allege that during the past year, defendants have obtained over one hundred cognovit deficiency judgments in the Toledo Municipal Court in the amount of $50,000, following the repossession of automobiles. In the brief filed by plaintiffs in this court and in oral argument, they claim that over the relevant four-year period permitted by the statute of limitations (R. C. 1302.98), the defendants obtained 439 cognovit deficiency judgments in the Toledo Municipal Court alone. Assuming the truth of the matters asserted in the complaint, it appears that the class is so numerous that a joinder of all members is impracticable because the utilization of the permissive joinder rule or the rule providing for intervention could conceivably bring before the forum between 100 and 400 party plaintiffs. See, *e. g.*, *Siegel* v. *Chicken Delight, Inc., supra* at 725 (action by five

franchisees on behalf of approximately 650); Dole, *Consumer Class Actions Under Recent Consumer Credit Legislation*, 44 N. Y. U. L. Rev. 80 (1969).

The second prerequisite of Rule 23(A), that there are questions of law or fact common to the class, is satisfied by the allegations contained in the complaint. On the basis of the complaint, the questions of law and fact common to the members of the class include; (1) the details of the allegedly fraudulent commercial practices and procedures utilized by the defendants in transactions with members of the class; (2) the defendants' violations of R. C. 1309 resulting from the practice of selling repossessed collateral to itself at private sales; (3) the enforcement of certain illegal terms in the security agreements signed by members of the class; (4) the constitutional questions affecting the commercial relations between the defendant and individuals comprising the class. The potential dissimilarity in the remedies and the varying amounts of damages sought by the named plaintiffs does not prohibit a class action where the complaint establishes a common course of conduct giving rise to the legal rights sought to be enforced by the class. *Esplin* v. *Hirschi* (C. C. A. 10, 1968), 402 F. 2d 94; *Dolgow* v. *Anderson* (E. D. N. Y., 1968), 43 F. R. D. 472 at 489; *Siegel* v. *Chicken Delight, Inc., supra* at 726. The legal injury allegedly sustained by the individual consumers flows in each instance from a common nucleus of operative facts; *i. e.*, the identical fraudulent commercial practices of the defendants. For the same reasons, the claims of the representative parties are typical of the claims of the class. Complete identity between the claims constituting each individual action is not required. See, e. g., Civil Rule 23 (C)(4)(b).

The final prerequisite of Rule 23(A) is that the representative parties must fairly and adequately protect the interest of the class. In *Eisen* v. *Carlisle & Jacquelin* (C. C. A. 2, 1968), 391 F. 2d 555 at 562, the United States Court of Appeals considered the following factors in determining the adequacy of the representation of the class: (1) the qualifications and experience of plaintiffs' attorney and his ability to conduct the litigation, and (2) the likelihood

that plaintiffs are involved in a collusive suit or that plaintiff has an interest adverse to those of the remainder of the class. This court is satisfied with the qualifications of plaintiffs' attorneys and the possibility of collusion appears to be non-existent in light of the fact that an institutional advocate is prosecuting the action. Moreover, as the court pointed out in *Eisen*, the fact that a small number of plaintiffs are representing the class does not preclude the use of the class action device. If it should appear during the trial of the case that the representative parties are not fulfilling their duty to protect the interests of the class, the trial court has adequate discretionary authority pursuant to Rule 23 to remedy the situation.

(3) *The Requirements Of Rule 23(B)(3)*

As stated above, in addition to satisfying the four prerequisites of Rule 23A, the plaintiffs must also satisfy at least one of the requirements of Rule 23(B). *Eisen* v. *Carlisle & Jacquelin, supra* at 561. The plaintiffs contend that the pleadings in the case at bar satisfy the requirements of 23(B)(1) and 23(B)(2) as well as the requirements of 23(B)(3). We conclude that the action may be properly maintained pursuant to 23(B)(3) and consequently, it is not necessary for us to consider the applicability of the first two subsections of Rule 23.

The advisory committee staff notes to Rule 23 provide, in part:

"Subdivision (B)(3) deals with fact patterns in which the class action is not so clearly called for, such as * * * a case where a fraud has been perpetrated on a large number of persons."

Before the court can determine that an action is a proper class action under 23(B)(3), it must first determine that the questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy. The resolution of the issue concerning the propriety of a suit under 23(B)(3) involves an assessment of various non-exclusive factors including:

"(A) the interest of members of the class in individually

controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already commenced by or against members of the class; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and (D) the difficulties likely to be encountered in the management of the class action." *Eisen* v. *Carlisle & Jacquelin, supra* at 565.

The claims of the plaintiffs and the class they represent are based upon a common nucleus of operative facts. The success of each individual claim will depend to a great extent upon a favorable disposition of the questions common to all members of the class. For example, if the representative parties are unable to show that defendants' method of disposing of the collateral was illegal pursuant to R. C. 1309.47, then the claims of the entire class would also fail in that respect because the procedures employed by the defendant were allegedly identical in every case. Likewise, the constitutional issues with regard to Ohio's repossession and cognovit note statutes present questions of law common to all members of the class. The same is true of the allegedly illegal provisions in the security agreement used by the defendants, since the agreement consists of a form which was executed by each individual consumer. See, e. g., *Green* v. *Wolf Corp., supra* at 300. As indicated earlier, the procedural devices of joinder, intervention, and consolidation are among the various alternatives to a class action. See, e. g., *Dolgow* v. *Anderson, supra* at 482. In the instant case, a class action is preferable to joinder due to the potential size of the class involved in this litigation.

The obvious intent of Rule 23 was to expand the class action concept in Ohio. Prior to Rule 23, effective after July 1, 1970, the procedure with respect to class actions was governed by R. C. 2307.21. This section provided:

"When the question is one of a common or general interest of many persons, or the parties are very numerous, and it is impracticable to bring them all before the court, one or more may sue or defend for the benefit of all."

Although the language of the statute appears to be

very broad in scope, the class action device was restricted by judicial decisions in Ohio.

The courts held that R. C. 2307.21 had to be read in *pari materia* with R. C. 2307.18 and 2307.20. R. C. 2307.18 provided:

"All persons having an interest in the subject of an action, and in obtaining the relief demanded may be joined as plaintiffs."

R. C. 2307.20 provided that parties united in interest were to be joined as plaintiffs or defendants. The Supreme Court of Ohio and several courts of appeals determined that the right to maintain a class action pursuant to R. C. 2307.21 was qualified by the provisions of the permissive joinder statute (R. C. 2307.18) and by the provisions of the statute regarding compulsory joinder (R. C. 2307.20). The language of the class action statute referring to a "question of common or general interest" was construed to mean "an interest in the subject of the action, and in obtaining the relief demanded," as that phrase was used in R. C. 2307.18. The application of this construction to a factual setting is illustrated by the case of *Colbert v. Coney Island, Inc.* (1954), 97 Ohio App. 311.

In *Colbert*, three Negro residents of Cincinnati brought a class action on behalf of themselves and all other persons similarly situated pursuant to R. C. 2307.21, against the defendant corporation, the proprietor and operator of Coney Island, a place of public amusement in Hamilton County, Ohio.

The petition alleged that the defendant had refused admission to Coney Island to plaintiffs and other persons similarly situated because of the race or color of the plaintiffs. The defendant demurred to the petition on the grounds that the action was improperly brought pursuant to R. C. 2307.21. The plaintiffs not desiring to plead further, the action was dismissed.

The court of appeals held that although a common and important question of law was presented by each of the plaintiffs in which they had a community of interest, their respective causes of action were separate and distinct. Since the subject of the action in each case was the exclu-

sion of each plaintiff from the premises of the defendant, the court ruled that neither of the plaintiffs had any interest in the ''subject of the action'' of the other. In other words, the court concluded that there was not such a community of interest and right of recovery based upon the same facts between the plaintiffs and those they sought to represent as would permit joinder over objection. Judge Fess was aware of the fact that the holding in *Colbert* was not in accord with the more liberal provisions of the Federal Rules of Civil Procedure which were in effect at that time. However, the court felt bound by the holdings of the Ohio Supreme Court restricting the class action devise. Thus, the decision of the trial court was affirmed upon the grounds of misjoinder of parties plaintiff.

The result of reading the joinder statutes in *pari materia* with the class action statute was to restrict the use of class suits to those cases in which the members of the class were united by common bond of property or identity of relief sought. See the advisory committee staff note to Rule 23. Rule 23 was designed to provide access to the courts for individuals of modest means by permitting them to minimize counsel fees through united action. Rule 23 is a significant departure from the former code practice and authorizes the class action device as a means of redressing consumer grievances. *Vasquez* v. *Superior Court* (1971), 4 Cal. 3d 800, 94 Cal. Rptr. 796.

The order of the trial court entering a final judgment of dismissal with regard to the class action aspects of the case is reversed and the cause is remanded to the trial court with instructions to reinstate the class action.

*Judgment reversed.*

POTTER, P. J., and WILEY, J., concur.