**PYLES et al., Appellees,**

v.

**JOHNSON et al., Appellants.**

[Cite as *Pyles v. Johnson* (2001), 143 Ohio App.3d 720.]

Court of Appeals of Ohio,
Fourth District, Gallia County.

No. 00CA15.

Decided June 4, 2001.

726

*Smith & Condeni Co., L.P.A., Edward Icove;* and *Gary M. Smith,* for appellees.

*Vorys, Sater, Seymour & Pease LLP, W. Breck Weigel* and *Mary C. Henkel,* for appellant Loan Central, Inc.

*Frantz Ward LLP, Brett K. Bacon, Michael J. Holleran, Gregory R. Farkas* and *Jenifer E. Novak,* for appellant The Associates.

---

HARSHA, Judge.

Loan Central, Inc. and The Associates[1] appeal the Gallia County Common Pleas Court's judgment granting the appellees' motion for class certification. Their sole assignment of error is:

"The trial court abused its discretion in granting plaintiffs/appellees' motion for class certification."

Because we find that the grant of class certification was proper, we affirm the trial court's order.

Woodrow and Julia Pyles, Ralph and Lereda Davis, Granville[2] and Emma Edmonds, Troy and Nancy Stewart, and Glenn and Dora Adkins filed an amended complaint against Robert and Linda Johnson ("the Johnsons"),[3] Jack and Linda Claxton ("the Claxtons"), The Associates, and Loan Central, Inc. The Johnsons were the owners of Ohio Valley Memorial Gardens ("OVMG"), a

---

**1.** Neither Robert and Linda Johnson nor Jack and Linda Claxton filed an appeal or a brief in this matter.

**2.** Mr. Edmonds passed away on June 13, 2000, and the appellees' counsel filed a suggestion of death with the lower court.

**3.** The trial court entered a default judgment against the Johnsons.

cemetery, which is now owned by the Claxtons. While the Johnsons owned OVMG, they entered into contracts with the appellees for the sale of caskets, mausoleum space, crypts, memorials, and similar goods and services.[4] Some of the appellees paid cash for their purchases while others entered into installment contracts. The Johnsons sold the installment contracts to The Associates and Loan Central, Inc. for less than face value.

In their amended complaint, the appellees allege that the Johnsons violated the Retail Installment Sales Act ("RISA"), violated the Consumer Sales Practices Act ("CSPA"), breached the contracts, breached their fiduciary duty, and made fraudulent misrepresentations. The appellees do not allege that Loan Central, Inc. or The Associates committed any of these acts but seek to hold them liable based on a contract provision which reads:

"NOTICE: ANY HOLDER OF THIS CONSUMER CREDIT CONTRACT IS SUBJECT TO ALL CLAIMS AND DEFENSES WHICH THE DEBTOR COULD ASSERT AGAINST THE SELLER OF GOODS OR SERVICES OBTAINED PURSUANT HERETO OR WITH THE PROCEEDS HEREOF. RECOVERY HEREUNDER BY THE DEBTOR SHALL NOT EXCEED AMOUNTS PAID BY THE DEBTOR HEREUNDER."

The appellees acknowledge that each financial institution may be held liable only for the contracts it purchased.

The appellees moved to certify this case as a class action, and the parties agreed to waive a hearing and submit the case to the court on their memoranda. The court found that the appellees satisfied the requirements of Civ.R. 23(A) and (B)(3) and certified the class. Loan Central, Inc. and The Associates timely appealed this entry.

The parties acknowledge that trial courts have broad discretion in determining whether to certify a case as a class action. *Marks v. C.P. Chem. Co.* (1987), 31 Ohio St.3d 200, 31 OBR 398, 509 N.E.2d 1249, syllabus. Therefore, unless we find an abuse of that discretion, we must affirm the trial court's decision. *Id.* An abuse of discretion is more than a mere error of judgment; normally it implies an attitude on the part of the trial court that is unreasonable, arbitrary, or unconscionable. *Ojalvo v. Bd. of Trustees of Ohio State Univ.* (1984), 12 Ohio St.3d 230, 232, 12 OBR 313, 314–315, 466 N.E.2d 875, 876–877. A trial court which routinely handles case-management problems is in the best position to analyze the difficulties which can be anticipated in litigation of class actions. *Marks* at 201, 31 OBR at 398–399, 509 N.E.2d at 1251–1252.

---

4. These were pre-need contracts whereby the purchasers would buy the products and services to be available upon their death or the death of the beneficiary for whom they were purchased.

■ In *Warner v. Waste Mgt., Inc.* (1988), 36 Ohio St.3d 91, 521 N.E.2d 1091, the Supreme Court of Ohio established clear standards for reviewing a lower court's class action certification decision. A trial court must make seven affirmative findings before a case may be certified as a class action. Two of these prerequisites are implicitly required by Civ.R. 23, while five others are explicitly set forth in the rule. *Id.* at paragraph one of the syllabus. The failure of a trial court to find, by a preponderance of the evidence, that all seven Civ.R. 23 requirements have been met will result in the denial of class certification. *Id.* at 94, 521 N.E.2d at 1094–1095.

■ The first implicit prerequisite is the existence of an unambiguous and identifiable class. *Id.* at paragraph two of the syllabus. For example, classes such as "all poor people" are too amorphous to permit identification with a reasonable effort. The second implicit prerequisite is that the class representatives must be members of that unambiguous and identifiable class. 36 Ohio St.3d at 96, 521 N.E.2d at 1095–1096.

Four of the explicit prerequisites are set forth in Civ.R. 23(A). A member of a class may sue as a representative party on behalf of all class members only if (1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims of the representative parties are typical of the claims of the class, and (4) the representative parties will fairly and adequately protect the interests of the class. These four requirements are often referred to as "numerosity," "commonality," "typicality," and "adequacy of representation," respectively.

The final explicit prerequisite is set forth in Civ.R. 23(B), which requires a finding that the proposed action falls within one of its three applicable subsections. This case most closely fits within subsection (3) of the rule, which specifies that the trial court find that "the questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy." Civ.R. 23(B)(3). In order to make these two findings, the rule offers four pertinent matters for the trial court to consider: (a) the interest of members of the class in individually controlling the prosecution of separate actions, (b) the extent and nature of any litigation concerning the controversy already commenced by members of the class, (c) the desirability or undesirability of concentrating the litigation of the claims in the particular forum, and (d) the difficulties likely to be encountered in the management of a class action. Civ.R. 23(B)(3).

· ■ The trial court found that the appellees satisfied these prerequisites and certification was appropriate. The court found that an unambiguous and identifi-

able class consisting of those who purchased cemetery plots and crypts existed; that there were at least one hundred fifty cases, so joinder was impracticable; that the allegations of fraud and a common business pattern are common questions of law and fact; that the class representatives allege fraud and a common business practice that is typical of the remaining claims; and that the representative parties would fairly and adequately protect the class members. The court also found that the requirements of Civ.R. 23(B)(3) are present here as the questions of law or fact common to class members predominate over individual questions and a class action is superior to other methods of adjudication.

 Throughout their brief, the appellants assert that the trial court did not engage in the "rigorous analysis" required by *Hamilton v. Ohio Savings Bank* (1998), 82 Ohio St.3d 67, 694 N.E.2d 442, as evidenced by the fact that the court did not make sufficient findings of fact. In *Hamilton,* the Supreme Court of Ohio noted that while there is "no explicit requirement in Civ.R. 23 that the trial court make formal findings to support its decision on a motion for class certification, there are compelling policy reasons for doing so." *Id.* at 70, 694 N.E.2d at 447. The court noted that a lower court's failure to make such findings impeded appellate inquiry into whether the relevant factors were properly applied and given appropriate weight. *Id.* at 71, 694 N.E.2d at 448. The court then *suggested* that a trial court make separate written findings as to each of the class requirements, and specify its reasons for each finding. *Id.*

The trial court explicitly found that all but one of the first six prerequisites were present and stated its reasons for those findings. The court did not explicitly find that the appellees were members of the class but implicitly did so when it found that the representative parties and the other members of the class had the same types of claims against the appellants and the other defendants. The court also summarily found that the Civ.R. 23(B)(3) requirements were met without explaining its reasons for that finding.

 While trial courts should be aware that the Ohio Supreme Court has expressed a preference for findings of fact and reasons concerning each prerequisite of Civ.R. 23, nothing in *Hamilton* requires us to find an abuse of discretion solely because the trial court did not comply with this recommendation. Moreover, when a party requests certification, there is generally a hearing, accompanied by extensive documentation, depositions, admissions, interrogatories, affidavits, and oral testimony. *Warner, supra,* at 94, 521 N.E.2d at 1094–1095. Here, there were some general discovery materials and affidavits for the court to rely on, but the parties agreed that a hearing was unnecessary. As the trial court must assume the truth of allegations in the complaint and not consider the merits of the case, we must conclude that the court relied on virtually "undisputed" facts

when deciding the Civ.R. 23 motion. See *Ojalvo v. Bd. of Trustees of Ohio State Univ.* (1984), 12 Ohio St.3d 230, 233, 12 OBR 313, 315–316, 466 N.E.2d 875, 877–878 (holding that a court's considerations do not involve the action's merits when it decides the propriety of class certification), and *Ungerbuhler v. Butler Rural Elec. Coop., Inc.* (Jan. 31, 1985), Hamilton App. No. C–840227, unreported, 1985 WL 9305 (stating that allegations in the complaint are assumed to be true for purposes of determining a Civ.R. 23 motion to certify a class).

Despite the court's lack of explicit findings and reasons concerning some of the prerequisites of Civ.R. 23, we cannot conclude that the court abused its discretion in reaching its decision or that the court did not carefully consider the merits of the motion. We consider each prerequisite individually.

## Unambiguous and Identifiable Class

"The requirement that there be a class will not be deemed satisfied unless the description of it is sufficiently definite so that it is administratively feasible for the court to determine whether a particular individual is a member." *Hamilton v. Ohio Savings Bank* (1998), 82 Ohio St.3d 67, 71–72, 694 N.E.2d 442, 448, citing 7A Charles A. Wright, Arthur R. Miller & Mary Kay Kane, Federal Practice and Procedure (2 Ed.1986) 120–121, Section 1760 ("Wright & Miller"). The class definition must be precise enough "to permit identification within a reasonable effort." *Warner, supra,* at 96, 521 N.E.2d at 1096.

The court identified the class here as those who purchased cemetery plots or crypts from the Johnsons. This class is easily identifiable through OVMG's records and is unambiguous. However, the appellants argue that none of the plaintiffs has claims against every defendant and the court must investigate each plaintiff's claims to determine which of the two financial institutions, if either, the plaintiff has a claim against. Though this is true, the court can easily discern which financial institution purchased which plaintiff's contract by examining the institution's own records. Therefore, the court did not abuse its discretion in finding that the class is unambiguous and identifiable.

## Class Membership

The class membership prerequisite requires only that "the representative have proper standing. In order to have standing to sue as a class representative, the plaintiff must possess the same interest and suffer the same injury shared by all members of the class that he or she seeks to represent." 5 Moore's Federal Practice (3 Ed.1997) 23–57, Section 23.21[1]. Here, the appellees assert that they purchased crypts and/or cemetery plots from the Johnsons and suffered damages arising from these sales. Some of the class representatives paid cash and some entered into installment contracts that were later sold to

either Loan Central, Inc. or The Associates. Accordingly, the court did not abuse its discretion when it concluded that the appellees have proper standing to sue as representatives of the class and the class membership requirement is satisfied.

### Numerosity

Civ.R. 23(A)(1) requires plaintiffs to demonstrate that "the class is so numerous that joinder of all members is impracticable." In construing this requirement, courts have not specified numerical limits, but subclasses have been certified with as few as twenty-three members. *Basile v. Merrill, Lynch, Pierce, Fenner & Smith, Inc.* (S.D.Ohio 1985), 105 F.R.D. 506. Moreover, Professor Miller has indicated that "[i]f the class has more than forty people in it, numerosity is satisfied; if the class has less than twenty-five people in it, numerosity probably is lacking; if the class has between twenty-five and forty, there is no automatic rule * * *." Wright & Miller, *supra*, at 22.

Here, the court found approximately one hundred fifty members of the class to be sufficient to satisfy the numerosity requirement. The court did not abuse its discretion in finding that such a large number of plaintiffs makes joinder impracticable.

### Commonality

Civ.R. 23(A)(2) requires the presence of "questions of law or fact common to the class." Courts have generally given this requirement a permissive application. *Marks, supra,* at 202, 509 N.E.2d 1249, citing Wright & Miller at 169–228, Section 1763. This provision does not require that all questions of law or fact raised in the dispute be common to all the parties. *Marks, supra,* at 202, 509 N.E.2d 1249, citing 3B Moore's Federal Practice (1987) 23–159, Paragraph 23.06-1. There may be differing factual and legal issues, but such differences do not enter into the analysis until the court begins to consider the Civ.R. 23(B)(3) requirement of predominance and superiority. *Id.*

The commonality requirement is satisfied if the court finds a "common nucleus of operative facts." *Miles v. N.J. Motors* (1972), 32 Ohio App.2d 350, 61 O.O.2d 518, 291 N.E.2d 758, syllabus. The federal courts have found commonality when there is a common fact situation or generally common legal and factual questions. *Resnick v. Am. Dental Assn.* (N.D.Ill.1981), 90 F.R.D. 530; *Sweet v. Gen. Tire & Rubber Co.* (N.D.Ohio 1976), 74 F.R.D. 333.

Here, the claims arise from the Johnsons' alleged fraudulent dealings whereby they would contact customers of OVMG to schedule reviews of cemetery records but instead made sales pitches regarding new purchases. The Johnsons also allegedly "raided" trust funds earmarked for pre-need funeral expenses. As a

result of this activity, the appellees assert that the remaining funds are insufficient to provide the goods and services owed them. The trial court did not abuse its discretion when it determined that because all the claims stem from the same types of conduct by the Johnsons, the commonality requirement has been met.

*Typicality*

Under Civ.R. 23(A)(3), the claims or defenses of the representatives must be typical of the claims or defenses of the class. The purpose of this provision is to protect absent class members. 3B Moore's Federal Practice, *supra,* at 23–178, Paragraph 23.06–2. This requirement is met when there is no express conflict between the representative parties and the class. *Marks, supra,* at 202, 31 OBR at 399–400, 509 N.E.2d at 1252–1253, citing *Caruso v. Celsius Insulation Resources, Inc.* (M.D.Pa.1984), 101 F.R.D. 530, 534.

The appellants assert that the claims of the representative plaintiffs are not typical of those of the class for several reasons. First, they argue that none of the class representatives has claims against all defendants. Second, they argue that the class representatives are seeking damages on their own behalf, but not on behalf of absent class members. Third, the appellants argue that the class members would be entitled to different remedies and, therefore, the claims of the class representatives are not typical.

In a case such as this, it would be impossible for a single class representative to have a claim against each defendant. The Johnsons sold the contracts to two different financial institutions and obviously could not sell a single contract to both institutions. However, there are class representatives who paid cash and representatives whose contracts were bought by each of the appellants. Moreover, all the class members are attempting to prove the same allegations against the Johnsons regardless of which financial institution may also be liable.

The appellants' remaining two arguments are likewise meritless. It is clear that the class representatives are seeking damages and possibly contract rescission on their own behalf, as well as for the other members of the class. While different class members may be entitled to different remedies, *i.e.,* the estates of deceased class members who are buried at OVMG may be entitled only to a monetary settlement, while those who are living may be entitled to rescission of the contract and return of their entire purchase price, this does not require a finding that typicality is lacking. See *Ojalvo v. Bd. of Trustees of Ohio State Univ.* (1984), 12 Ohio St.3d 230, 232, 12 OBR 313, 314–315, 466 N.E.2d 875, 876–877 (stating that "a trial court should not dispose of a class certification solely on the basis of disparate damages"). Typicality does not require exact identity of claims. *Baughman v. State Farm Mut. Auto. Ins. Co.* (2000), 88 Ohio St.3d 480, 485, 727 N.E.2d 1265, 1270–1271; *Planned Parenthood Assn. of Cincinnati, Inc.*

*v. Project Jericho* (1990), 52 Ohio St.3d 56, 64, 556 N.E.2d 157, 165–166. Rather, typicality is met where there is no express conflict between the class representatives and the class. *Hamilton, supra,* at 77, 694 N.E.2d at 451–452. The fact that some class members may be entitled to different relief than the representatives does not mean that their claims are not typical or that there is a conflict between the representatives and the class.

■ The appellants also maintain that even if the court should have granted class certification, it should have created sub-classes. However, the appellants did not assign the court's failure to create sub-classes as an assignment of error. Because the appellants failed to separately assign this alleged error, we need not consider it. See App.R. 12(A)(2).

The court did not abuse its discretion when it found that the "typicality" prerequisite has been met.

### Adequacy of Representation

■ Last, Civ.R. 23(A)(4) requires that the representative parties "fairly and adequately protect the interests of the class." "Federal courts have referred to this requirement as being of crucial importance in terms of ensuring due process to members of the proposed class who will not have their individual day in court." *Marks, supra,* at 203, 31 OBR at 400, 509 N.E.2d at 1253–1254, citing *Augusta v. Marshall Motor Co.* (N.D.Ohio 1977), 453 F.Supp. 912, 917–919. Generally, this requirement is divided into two components: (1) consideration of the adequacy of the representative, and (2) the adequacy of counsel. *Marks, supra,* citing *Caruso v. Celsius Insulation Resources, Inc.* (M.D.Pa.1984), 101 F.R.D. 530, 534. A representative is deemed adequate if his interest is not antagonistic to that of the other class members. *Marks, supra,* citing 3B Moore's Federal Practice, *supra,* at 23–188, Paragraph 23.07[1]; *Vinci v. Am. Can Co.* (1984), 9 Ohio St.3d 98, 9 OBR 326, 459 N.E.2d 507. As purchasers of crypts and cemetery plots from the Johnsons, the appellees' interest is compatible with that of other class members who have made similar purchases. The appellants have not disputed that the appellees' counsel is competent and experienced in litigating class actions. Therefore, the court's determination that the requirements of Civ.R. 23(A)(4) have been satisfied is not an abuse of discretion.

### Civ.R. 23(B)(3) Requirements

Civ.R. 23(B)(3) promotes the class action format in cases where the efficiency and economy of common adjudication outweigh the interests of individual autonomy. *Warner, supra,* at 96, 521 N.E.2d at 1095–1096; *Marks, supra,* at 204, 509 N.E.2d at 1254; *Schmidt v. Avco Corp.* (1984), 15 Ohio St.3d 310, 314, 15 OBR 439, 442–443, 473 N.E.2d 822, 825–826; Wright & Miller, *supra,* at 517–519,

Section 1777. "[T]his portion of the rule also was expected to be particularly helpful in enabling numerous persons who have small claims that might not be worth litigating in individual actions to combine their resources and bring an action to vindicate their collective rights." Wright & Miller, *supra*, at 518, Section 1777.

As the United States Supreme Court explained:

"The policy at the very core of the class action mechanism is to overcome the problem that small recoveries do not provide the incentive for any individual to bring a solo action prosecuting his or her rights. A class action solves this problem by aggregating the relatively paltry potential recoveries into something worth someone's (usually an attorney's) labor." *Amchem Prods., Inc. v. Windsor* (1997), 521 U.S. 591, 617, 117 S.Ct. 2231, 2246, 138 L.Ed.2d 689, 709, quoting *Mace v. Van Ru Credit Corp.* (C.A.7, 1997), 109 F.3d 338, 344.

### 1. Common Questions of Law and Fact Predominate

Before granting class certification under Civ.R. 23(B)(3), the court must first find that the questions of law or fact common to members of the class predominate over individual questions. For common questions of law or fact to predominate, it is not sufficient that such questions merely exist; rather, the common questions must represent a significant aspect of the case. *Schmidt v. Avco Corp.* (1984), 15 Ohio St.3d 310, 313, 15 OBR 439, 473 N.E.2d 822, 824–825. Furthermore, they must be capable of resolution for all members in a single adjudication. *Id.*

The appellants argue that common questions do not predominate here and that the case involves a variety of individual inquiries. The appellants further argue that the claims turn on issues which must be decided on an individual basis for each plaintiff, *i.e.*, breach of contract, fraud, and breach of fiduciary duty. The appellants also submit that fact-driven defenses such as statute of limitations, estoppel, and mitigation of damages turn on individualized facts. The appellees maintain that nearly every class action involves some individualized questions, but here the common fraudulent business practices and the standardized consumer documents used by the Johnsons satisfy the predominance question. Further, the existence of affirmative defenses does not, in and of itself, cause individual questions to predominate.

In this case, the questions of law and fact that have already been shown to be common to each plaintiff arise from similar form contracts and a common business practice. The complaint relates to the use of standardized procedures and practices used by the Johnsons to sell products and their failure to take the

requisite steps to ensure that such products can be delivered when promised. These claims comprise the bulk of the appellees' complaint.

The United States Supreme Court has noted that "[p]redominance is a test readily met in certain cases alleging consumer or securities fraud or violations of the antitrust laws." *Amchem, supra.* The California Supreme Court explained:

"Frequently, numerous consumers are exposed to the same dubious practice by the same seller so that proof of the prevalence of the practice as to one consumer would provide proof for all. Individual actions by each of the defrauded consumers is often impracticable because the amount of individual recovery would be insufficient to justify bringing a separate action; thus an unscrupulous seller retains the benefits of its wrongful conduct. A class action by consumers produces several salutary by-products, including a therapeutic effect upon those sellers who indulge in fraudulent practices, aid to legitimate business enterprises by curtailing illegitimate competition, and avoidance to the judicial process of the burden of multiple litigation involving identical claims. The benefit to the parties and the courts would, in many circumstances, be substantial." *Vasquez v. Superior Court of San Joaquin Cty.* (1971), 4 Cal.3d 800, 808, 94 Cal.Rptr. 796, 800–801, 484 P.2d 964, 968–969.

"[A] claim will meet the predominance requirement when there exists generalized evidence which proves or disproves an element on a simultaneous, class-wide basis, since such proof obviates the need to examine each class member's individual position." *Lockwood Motors, Inc. v. Gen. Motors Corp.* (D.Minn.1995), 162 F.R.D. 569, 580.

The fact that the plaintiffs entered into separate contracts with the Johnsons does not mean that these claims are improper for class action treatment. See *Hamilton, supra,* at 82–83, 694 N.E.2d at 455–456. Moreover, it appears that the contracts entered into by the Johnsons are identical or at least similar to one another; the appellees allege that the Johnsons have breached these contracts in that they are unable to provide the promised services. This allegation, if true, can be proven on a class-wide basis.

Likewise, "a fraud perpetrated on numerous persons by the use of similar misrepresentations may be an appealing situation for a class action." 1966 Advisory Committee Notes to Fed.R.Civ.P. 23(b)(3). Therefore, class action treatment is appropriate where the claims arise from standardized forms or routine procedures, notwithstanding the need to prove reliance. See, *e.g.,* *Portman v. Akron S. & L. Co.* (1975), 47 Ohio App.2d 216, 1 O.O.3d 287, 353 N.E.2d 634; *Mayo v. Sears, Roebuck & Co.* (S.D.Ohio 1993), 148 F.R.D. 576. When a common fraud is perpetrated on a class of persons, they should be able to pursue an avenue of proof that does not focus on questions affecting only

individual members. *Cope v. Metro. Life Ins. Co.* (1998), 82 Ohio St.3d 426, 430, 696 N.E.2d 1001. Moreover, proof of reliance may be sufficiently established by inference or presumption. See *Vasquez, supra,* 4 Cal.3d at 813–815, 94 Cal.Rptr. at 804–805, 484 P.2d at 972–973.

In *Cope,* the Ohio Supreme Court concluded that breach of fiduciary duty claims may be the proper subject of a class action as well. 82 Ohio St.3d at 437, 696 N.E.2d at 1008–1009. The court noted that if a jury finds that a reasonable person in the same circumstances as one of the plaintiffs would repose special confidence and trust in the defendant to disclose material information, it may infer the existence of a fiduciary duty across the entire class. *Id.* Though it may be that the plaintiffs "will not be able to establish, factually or legally, that a fiduciary relationship exists[,] [t]he predominant question is still, however, the conduct of the defendants, a common question of fact." *Id.,* citing *Skalbania v. Simmons* (Ind.App.1982), 443 N.E.2d 352, 361.

It is possible that a significant amount of time may be spent litigating questions affecting only individual class members. However, a court should not "determine predominance by comparing the time that the common issues can be anticipated to consume in the litigation to the time that individual issues will require. Otherwise, only the most complex common questions could predominate since such issues tend to require more time to litigate than less complex issues." 5 Moore's Federal Practice (3 Ed.1997) 23–207 to 23–208, Section 23.46[1]. As one court explained:

"[A]rguably it is true that as a class action more time *in toto* will be spent in proof of individual damage claims in any of the class actions than will be spent in proof of conspiracy. * * * [However,] if there were to be but a single case for trial, the court would expect that the great bulk of the time of that trial would be consumed with proof or the attempted proof of the existence and effect of a conspiracy and that the fraudulent concealment and damage issues would be far less predominant in the sense of time consumed at the trial. Were there to be 500 separate suits, this same pattern undoubtedly would prevail as to each. It seems specious and begging the question to say that if these 500 law suits were brought into a class so that proof on the issues of conspiracy need to be adduced only once and the result then becomes binding on all 500, * * * thereby the common issue of conspiracy no longer predominates because from a total time standpoint, cumulatively individual damage proof will take longer." *Minnesota v. U.S. Steel Corp.* (D.Minn.1968), 44 F.R.D. 559, 569.

In sum, we conclude that the trial court did not abuse its discretion in finding that these claims pervade throughout the class and predominate over individualized claims that may result from facts pertaining to only some of the plaintiffs, *i.e.,* retail installment sales contracts versus cash payments. Moreover, these

claims are subject to proof on a class-wide basis and need not be proven by each individual plaintiff.

Likewise, the fact that a statute of limitations may bar the claims of some, but not all, class members does not compel a finding that individual issues predominate over common ones. *Hamilton, supra,* at 84, 694 N.E.2d at 456–457, citing 5 Moore's Federal Practice (3 Ed.1997) 23–210 to 23–211, Section 23.46[3]. "[A]s long as there is a sufficient nucleus of common issues, differences in the application of a statute of limitations to individual class members will not preclude certification under Rule 23(b)(3)." *Id.* We believe that the same conclusion must logically be reached as to the other defenses pertaining only to some of the class members. Though the appellants may have specific defenses against one or more members of the class, the claims discussed above predominate over these individualized defenses. Therefore, the trial court's finding that the predominance requirement was satisfied is not an abuse of discretion.

### 2. *Class Action is Superior to Other Methods of Adjudication*

Civ.R. 23(B)(3) requires a finding that "a class action is superior to other available methods for the fair and efficient adjudication of the controversy." Certain factors should be considered in determining whether a class action is the superior method. These factors are outlined in Civ.R. 23(B)(3).

First, the court should consider "the interest of members of the class in individually controlling the prosecution or defense of separate actions." Civ.R. 23(B)(3)(a). The appellants correctly argue that by bringing their CSPA claims in a class action, the plaintiffs are precluded from seeking treble damages that would be available if successful claims were brought individually. R.C. 1345.09 provides:

"(B) Where the violation was an act or practice declared to be deceptive or unconscionable by rule adopted under division (B)(2) of section 1345.05 of the Revised Code before the consumer transaction on which the action is based, or an act or practice determined by a court of this state to violate section 1345.02 or 1345.03 of the Revised Code and committed after the decision containing the determination has been made available for public inspection under division (A)(3) of section 1345.05 of the Revised Code, the *consumer may rescind the transaction or recover, but not in a class action, three times the amount of his actual damages or two hundred dollars, whichever is greater, or recover damages or other appropriate relief in a class action under Civil Rule 23, as amended."* (Emphasis added.)

Clearly, the plaintiffs in this action are entitled to higher damage awards if they bring individual actions. However, the class action mechanism allows

smaller claims to be aggregated into a single larger claim, thereby providing greater incentive to prosecute. See *Amchem, supra,* at 617, 117 S.Ct. at 2246–2247, 138 L.Ed.2d at 708–709. Moreover, the plaintiffs are free to opt out of the class and prosecute their claims individually if they so desire. Therefore, their rights to treble damages are protected.

Civ.R. 23(B)(3)(b) directs the court to consider the number of cases filed by individual class members. There is no evidence in the record that any class members have filed individual actions. The Ohio Supreme Court noted:

■ "The presence of parallel, individual actions tends to weigh against class certification, while the *lack* of parallel lawsuits tends to weigh in *favor* of certification." (Internal citations omitted.) (Emphasis *sic.*) *Hamilton, supra,* at 81, 694 N.E.2d at 455.

The lack of individual lawsuits relating to this case demonstrates that there is no current or anticipated interest in individuals pursuing their own separate actions.

■ The court should also consider the "desirability or undesirability of concentrating the litigation of the claims in the particular forum." Civ.R. 23(B)(3)(c). Because of the common issues of fact and law, a single adjudication appears efficient. Moreover, given that the class definition is confined to purchases in the state of Ohio and violations of Ohio law are alleged, the state court system is appropriate.

■ Last, Civ.R. 23(B)(3)(d) instructs the court to consider "the difficulties likely to be encountered in the management of a class action." The appellants assert that differing remedies and compulsory counterclaims make a class action unmanageable. We disagree. As we have noted throughout this opinion, there are numerous issues that all the plaintiffs have in common. While the appellants may have legitimate defenses to these claims, there is no reason to believe that these defenses make a class action unmanageable. Most important, the trial court is in the best position to control the scope of the litigation and determine the easiest and most efficient means of disposing of the case. Therefore, the trial court's finding that a class action is superior to other methods of adjudication is not an abuse of discretion.

### Conclusion

We conclude that the trial court did not abuse its discretion in finding that each of the requirements for a class action under Civ.R. 23(A) and (B)(3) were met.

Therefore, we need not consider whether the appellees would have met the class action requirements of Civ.R. 23(B)(2). The trial court's judgment is affirmed.

*Judgment affirmed.*

PETER B. ABELE, P.J., and EVANS, J., concur.