OPINION
{¶ 1} Plaintiffs-appellants, Kenneth Fowler, Frank Martin, and the class they seek to represent, appeal from Jefferson County Common Pleas Court judgments denying their motion for class certification and denying their motion to amend their second amended complaint.
 {¶ 2} Fowler and Martin propose that they are typical class members of the class they seek to represent. Fowler lives in Stratton, Ohio and Martin resides in Empire, Ohio. Both are located in very close proximity to the Sammis Power Plant (Sammis Plant) in Jefferson County, Ohio.
 {¶ 3} The Sammis Plant is owned and operated by defendant-appellee, Ohio Edison Company. The Sammis Plant contains seven steam-powered units that generate electricity from coal combustion.
 {¶ 4} Appellants allege that they have been negatively affected by alleged illegal and harmful emissions from the Sammis Plant. They assert that their homes and property have suffered damage due to pollution from the Sammis Plant. Fowler further asserts that he suffers from chronic pulmonary disease, bronchial asthma, and emphysema due to pollutants from the Sammis Plant. And Martin asserts that he has been exposed to the Sammis pollutants his entire life.
 {¶ 5} Appellants filed their initial complaint on August 22, 2005. At that time, two different individuals were the named plaintiffs. Appellants then filed an amended complaint where they substituted Fowler and Martin as the named plaintiffs. They then filed their second amended complaint on April 10, 2006.
 {¶ 6} The second amended complaint alleged the following. As part of the Clean Air Act, every state is required to submit to the United States Environmental Protection Agency (EPA) a plan for achieving and maintaining the National Ambient Air Quality Standards (NAAQS). This state implementation plan is known as a SIP. Ohio's SIP applies to major stationary sources such as the Sammis Plant and sets limits on the type and amount of air pollutants that may enter the air from such sources. Under the Ohio SIP, any person who wishes to modify a source of air pollutants must first obtain a permit from the Ohio EPA. A "modification" includes *Page 2 
any physical change or change in the method of operation of a source of air pollutants that increase the amount of pollutants.
 {¶ 7} During the period of 1984 to 1998, appellee undertook 11 construction projects at the Sammis Plant. If these projects were classified as modifications, appellee was required to obtain pre-construction permits, which it failed to do. These 11 construction projects were the subject of a federal lawsuit regarding appellee's compliance with the Prevention of Significant Deterioration (PSD) program. In August 2003, the Federal District Court of Ohio, Eastern Division, entered a 109-page opinion in United States of America, et al.v. Ohio Edison Co., et al. (S.D. Ohio 2003), 276 F.Supp.2d 829.
 {¶ 8} Appellants alleged that the district court found appellee to be in violation of the Clean Air Act. Appellants' complaint quoted a portion of the opinion reading:
 {¶ 9} "By any standard, the enforcement of the Clean Air Act with regard to the Sammis Plant has been disastrous. From a public health perspective, thirty-three years after passage of the Act, the plant to this day emits on an annual basis 145,000 tons of sulphur dioxide, a pollutant injurious to the public health. * * * From the standpoint of Ohio Edison, since 1970 the company has invested over $450 million to install pollution control devices on the Sammis units yet still fails to meet the new source pollution standards. Thirty-three years later, the air is still not clean, tens of thousands of jobs have been lost, and enforcement by the EPA has been highly inconsistent." Id. at 833.
 {¶ 10} The district court found that appellee's projects were in fact modifications. This meant that appellee was required to obtain certain permits before beginning the modifications. The court found that appellee failed to obtain the necessary permits. It further found that appellee's modifications resulted in increased emissions.
 {¶ 11} Appellants' complaint went on to make further allegations that appellee's emissions of air pollutants are unlawful, large clouds of particulate matter *Page 3 
are emitted from the Sammis Plant and winds distribute this pollution with the fall-out coming down on appellants and their property, and these particulates have detrimental effects on the class members' health and property.
 {¶ 12} The complaint defined the class affected as including all persons who live in Ohio whose persons or property was damaged by pollutants from the Sammis Plant. It then broke the class into two subclasses: those who have already been injured and those who may be injured in the future. It raised claims for negligence per se, common law negligence, gross negligence, negligent failure to warn, strict liability, public nuisance, toxic trespass, and toxic assault and battery. It sought compensatory and punitive damages in addition to payment for medical monitoring.
 {¶ 13} Appellants then filed a motion to certify the proposed class.
 {¶ 14} Appellee filed a memorandum in opposition to class certification. It argued that appellants could not satisfy their burden for class certification. To its memorandum, appellee attached affidavits, documents from its federal litigation with the EPA including a consent decree filed in the case and adopted by the district court, and the depositions of Fowler and Martin. In the consent decree, appellee did not admit liability and the court did not find liability. Additionally, the consent decree found that the district court's opinion did not conclude that any alleged violation of the PSD standards had any effect on the public's health. The consent decree further provided that it was being entered solely for purposes of the federal case and that no portion of it or any prior rulings or orders in the case could be enforceable by anyone other than the parties.
 {¶ 15} The trial court held a hearing on whether to certify the class. It later issued a 33-page opinion denying certification. The court found that appellants' proposed class definition did not clearly define the class in a way that would make it administratively feasible for the court to determine whether a particular person was a class member. The court stated that it would be "nearly impossible" to determine which residents of Ohio might have had their persons or property damaged by emissions from the Sammis Plant. *Page 4 
 {¶ 16} The court then noted that appellants proposed four other possible class definitions that limited the scope of the class. These proposed definitions limited the class to those who reside in Jefferson County or within 30 miles of the Sammis Plant. The court found that none of the proposed alternative definitions provided a class description that was sufficiently definite so that it was administratively feasible for the court to determine who was a member.
 {¶ 17} The court further recognized that it had the authority to construct its own class definition. But it declined to do so, noting that any class it would construct would be as arbitrary as appellants' proposed class because it did not have enough information to determine the radius around the Sammis Plant that delineated which residents had been affected by emissions and which residents had not.
 {¶ 18} The trial court went on to analyze the other applicable factors and found that appellants met most of the other requirements.
 {¶ 19} But the court also found that appellants did not satisfy any of the three Civ. R. 23(B) alternatives, as is required to maintain a class action. In part, the court found that appellants did not demonstrate that common questions of law or fact to the class members predominated over questions affecting only individual members. It reasoned that the type of harm alleged in this case did not lend itself to a readily detectable link between injury and the alleged activity, which meant that there would be more individual questions of fact than with other types of environmental torts.
 {¶ 20} Consequently, the trial court denied appellants' motion for class certification.
 {¶ 21} Appellants subsequently filed a motion to amend their second amended complaint, among other motions. Appellants sought to modify their proposed class in an attempt to resolve the court's concerns with the class proposed in their second amended complaint. Appellants sought to limit the class to persons who reside in either Stratton, Ohio or Empire, Ohio and who have been exposed to emissions from the Sammis Plant. They stated that the proposed class consisted of approximately 577 people. Appellants also eliminated their request for *Page 5 
compensatory and punitive damages. They limited their prayer for relief to an injunction requiring appellee to fund a medical monitoring program.
 {¶ 22} Appellants then filed a timely notice of appeal on May 10, 2007. This court allowed a limited remand so that the trial court could rule on appellants' outstanding motions.
 {¶ 23} The trial court subsequently held a hearing. The trial court denied appellants' motion to amend their second amended complaint. The court concluded that appellants' motion was untimely (filed 19 months after the original complaint) and that allowing appellants to amend their second amended complaint would result in unfair prejudice to appellee, who had already had to defend against several unsuccessful proposed class definitions. Furthermore, the court found that amendment of the second amended complaint would be futile because the newly proposed class would still not be certifiable for many of the same reasons the previously proposed class was not certifiable.
 {¶ 24} With this court's permission, appellants amended their notice of appeal to include a timely appeal from the trial court's judgment denying their motion to amend their second amended complaint.
 {¶ 25} Appellants now raise two assignments of error, the first of which states:
 {¶ 26} "THE TRIAL COURT ERRED IN DENYING THE PLAINTIFFS' MOTION FOR CLASS CERTIFICATION IN ITS ORDER FILED APRIL 10, 2007."
 {¶ 27} Appellants argue that the trial court should have certified their first proposed class. This proposed class was:
 {¶ 28} "A class that consists of all persons who reside in Ohio whose persons or property was damaged by toxic pollutants and contaminants which originated from the W.H. Sammis Station owned by FIRST ENERGY [Ohio Edison is owned by First Energy] and located in Jefferson County, Ohio."
 {¶ 29} Appellants further broke down their proposed class into two subclasses:
 {¶ 30} "a. Those Class Members who, during the Class Period resided in *Page 6 
Ohio, and who have already suffered physical injury resulting from Defendants' pollution from the Sammis Plant; and b. Those Class Members who, during the Class Period resided in Ohio, and who are not yet injured, but who may be in the future." (Second Amended Complaint ¶¶ 51, 52).
 {¶ 31} Appellants first argue that their proposed class was identifiable. They contend that the residents of Jefferson County and its surrounding areas who have suffered personal injury or property damage due to the Sammis Plant's emissions were clearly identifiable through census data, property records, or a questionnaire.
 {¶ 32} For support, appellants point to Boggs v. Divested AtomicCorp. (S.D. Ohio 1991), 141 F.R.D. 58, where the plaintiffs sought to certify a class composed of all persons living within a six mile radius of the boundaries of a certain plant whose persons or property had been exposed to radioactive or hazardous wastes from the plant. Appellants assert the court found that the key inquiry was whether the plaintiffs had shown that the emissions reasonably might have reached persons and property within the specified area.
 {¶ 33} Appellants contend that as was the case in Boggs, emissions have reached everyone in Jefferson County and the surrounding area. They further argue that had the trial court believed that this geographic area was too wide, it could have simply limited the class to a specific mileage radius from the Sammis Plant.
 {¶ 34} Second, appellants argue that their proposed class was cohesive because the class shared common questions of law and fact. They assert that a significant part of what they would prove at trial is that the projects at the Sammis Plant were actual modifications, and not mere maintenance as appellee alleged, and that the resulting increase in emissions violated the Prevention of Significant Deterioration (PSD) standards.
 {¶ 35} A trial court has broad discretion in determining whether a class action may be maintained. Baughman v. State Farm Mut. Auto. Ins.Co. (2000), 88 Ohio St.3d 480, 483, 727 N.E.2d 1265. For that reason, an appellate court will not disturb the trial court's determination absent an abuse of discretion. Id. Abuse of discretion *Page 7 
is more than an error of law or judgment; instead it is a finding that the trial court's attitude is unreasonable, arbitrary, or unconscionable. Blakemore v. Blakemore (1983), 5 Ohio St.3d 217, 219,450 N.E.2d 1140.
 {¶ 36} Civ. R. 23 governs class actions. Civ. R. 23(A) contains four requirements for a class member to bring a class action: "(1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class."
 {¶ 37} Civ. R. 23(B) contains further conditions that must be satisfied:
 {¶ 38} "An action may be maintained as a class action if the prerequisites of subdivision (A) are satisfied, and in addition:
 {¶ 39} "(1) the prosecution of separate actions by or against individual members of the class would create a risk of
 {¶ 40} "(a) inconsistent or varying adjudications with respect to individual members of the class which would establish incompatible standards of conduct for the party opposing the class; or
 {¶ 41} "(b) adjudications with respect to individual members of the class which would as a practical matter be dispositive of the interests of the other members not parties to the adjudications or substantially impair or impede their ability to protect their interests; or
 {¶ 42} "(2) the party opposing the class has acted or refused to act on grounds generally applicable to the class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the class as a whole; or
 {¶ 43} "(3) the court finds that the questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy. The matters pertinent to the findings include: (a) the interest of members of the class in individually controlling the *Page 8 
prosecution or defense of separate actions; (b) the extent and nature of any litigation concerning the controversy already commenced by or against members of the class; (c) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; (d) the difficulties likely to be encountered in the management of a class action."
 {¶ 44} In addition, the Ohio Supreme Court has identified two other prerequisites to a class action that are implied in Civ. R. 23: (1) the class must be identifiable; and (2) the class representatives must be members of the class. Warner v. Waste Management, Inc. (1988),36 Ohio St.3d 91, 96, 521 N.E.2d 1091.
 {¶ 45} The plaintiffs have the burden of satisfying the requirements for class certification. Henes v. Ostrov Corp. (1986),30 Ohio App.3d 108, 109, 506 N.E.2d 939. Thus, in order to sustain a class action, the plaintiffs must satisfy all four of the Civ. R. 23(A) requirements and one of the three Civ. R. 23(B) requirements in addition to meeting the implied prerequisites set out by the Supreme Court.
 {¶ 46} In this case, the trial court found that appellants did not meet two of the necessary requirements. First, it found that the class was not identifiable. Second, it found that appellants could not meet any of the three Civ. R. 23(B) alternatives. For the reasons discussed below, the trial court acted within its discretion in deciding not to certify the proposed class. In reaching this conclusion, we have examined the elements required for certification.
 {¶ 47} First, the class must be identifiable. "`[T]he requirement that there be a class will not be deemed satisfied unless the description of it is sufficiently definite so that it is administratively feasible for the court to determine whether a particular individual is a member.'"Hamilton v. Ohio Sav. Bank (1998), 82 Ohio St.3d 67, 71-72,694 N.E.2d 442, quoting 7A Charles Alan Wright, Arthur R. Miller Mary Kay Kane, Federal Practice and Procedure (2 Ed. 1986) 120-121, Section 1760. Hence, the proposed class definition must be precise enough "to permit identification within a reasonable effort." Warner, 36 Ohio St.3d at 36.
 {¶ 48} The trial court determined that appellants' proposed class did not *Page 9 
define the class in a way that would make it administratively feasible for it to determine whether a particular individual was a class member. It found that it would be nearly impossible to establish which residents of Ohio might have had their person or property damaged by emissions from the Sammis Plant. The court noted that the proposed class could include any Ohio resident who passed through the area or even someone who simply parked their car in Jefferson County for one day during the relevant time period. It further found that it was administratively unfeasible to determine which persons or property had been damaged before allowing them to be a class member.
 {¶ 49} The court went on to note that it had the option of modifying the proposed class definition. It pointed out that appellants submitted four alternative class definitions. Two of the alternatives identified the proposed class by those residents whose persons were or might have been damaged by the Sammis Plant emissions or whose person might be so injured in the future. The other two alternatives identified the proposed class by those residents whose persons or property were damaged by emissions from the Sammis Plant. All four alternatives limited the class to those who reside in Jefferson County or within 30 miles of the Sammis Plant. However, the court determined that none of these proposed alternatives provided a definite class description so as to make it administratively feasible for it to determine who was a class member. It pointed out that all of the alternatives would require it to make individualized findings before determining if individuals were class members.
 {¶ 50} The court further pointed out that it also had the option of creating its own class definition. However, it declined to do so. It reasoned that any class it would construct would be just as arbitrary as those proposed by appellants because it did not have sufficient information from which to determine the radius around the Sammis Plant to delineate those who had been harmed from those who had not been harmed.
 {¶ 51} Here, as the trial court found, the description of appellants' proposed *Page 10 
class is not sufficiently definite so as to make it administratively feasible for the court to determine whether a particular person is a member.
 {¶ 52} Appellants rely on Boggs, 141 F.R.D. 58, in support of their position that their proposed class is identifiable. In Boggs, the plaintiffs sought to certify a class composed of all persons living within a six mile radius of the boundaries of a certain plant whose persons or property had been exposed to radioactive or hazardous wastes from the plant. The defendant argued that class certification was improper because it required the court to determine whether each person in the specified area had suffered actual injury from such exposure, which could only be accomplished by a trial on the merits. The court looked at two main questions: (1) whether there was any evidence that the plant discharged radioactive substances beyond its borders; and (2) whether the substances travelled up to six miles. Id. at 61.
 {¶ 53} The court found that the plaintiffs submitted evidence that radioactive substances had escaped beyond the plant's boundaries based on various reports and a deposition. Id. But it noted that the fact that such substances had escaped the plant did not necessarily lead to the conclusion that everyone within a six-mile radius was a class member. Id. The court then concluded that the plaintiffs presented evidence that the radioactive substances travelled six miles. Id. at 62. It relied on a deposition from the plaintiffs' expert who stated that the people in the vicinity of the plant had been exposed to radiation and that people who resided within a six-mile radius of the plant received higher doses of the radiation than those who lived further out. Id. The court then concluded that the plaintiffs' choice of a six-mile radius to define class membership bore a reasonable relationship to the evidence and the class definition was sufficiently definite. Id.
 {¶ 54} The present case is distinguishable from Boggs, however. In this case, appellants presented no evidence, expert testimony or otherwise, that emissions from the Sammis Plant have reached the proposed class members. At first they determined that anyone in Ohio who was damaged by emissions from the Sammis *Page 11 
Plant should be included in the class. Then when it became apparent that the trial court believed this class to be too broad, appellants asked the court to limit its scope to those persons residing in Jefferson County or within 30 miles of the Sammis Plant. However, it seems appellants arbitrarily picked these geographic boundaries. They provided no support for why they chose these boundaries. Unlike the plaintiffs inBoggs, appellants did not present an expert who stated that the emissions travelled these distances and affected these people.
 {¶ 55} Furthermore, as the trial court pointed out, there is no administratively feasible way for it to determine whether a particular person is a class member. How the court would determine which residents of Ohio have had their persons or property damaged by emissions from the Sammis Plant would turn into an administrative nightmare. As the trial court noted, the class could potentially include an Ohio resident who travelled near the Sammis Plant on just one occasion and had his car damaged by plant emissions. In Warner, 36 Ohio St.3d at 96, the Ohio Supreme Court found that the trial court abused its discretion in determining that a class consisting of all people who have ever worked within five miles of a specific site was identifiable. It found that such a class was unidentifiable because it "would include all transients who have, for one reason or another, `worked' within the defined zone." Id. The same reasoning applied here.
 {¶ 56} Thus, the trial court acted within its discretion in determining that appellants' proposed class was not identifiable. For this reason alone, we can affirm the trial court's judgment denying class certification. However, for thoroughness's sake, we will continue through the class certification elements.
 {¶ 57} Second, the class representatives must be members of the class. "The class membership prerequisite requires only that `the representative have proper standing. In order to have standing to sue as a class representative, the plaintiff must possess the same interest and suffer the same injury shared by all members of the class that he or she seeks to represent.'" Hamilton, 82 Ohio St.3d at 74, quoting 5 Moore's Federal Practice (3 Ed. 1997) 23-57, Section 23.21[1]. *Page 12 
 {¶ 58} There is no evidence that Fowler and Martin lack standing to sue appellee. In fact, appellee acknowledged that Fowler and Martin could have sued it in their individual capacities (had they done so in a timely manner). See Appellee's Brief at 26. And they have alleged that they have suffered health problems (Fowler) and property damage (Fowler and Martin) and that they have been exposed to harmful emissions from the Sammis Plant. The class they seek to represent has likewise purportedly suffered similar injuries allegedly due to the Sammis Plant emissions. Thus, appellants can meet this element.
 {¶ 59} Third, the class must be so numerous that joinder of all of its members is impracticable. The numerosity requirement is generally satisfied if the class has more than 40 people. Warner,36 Ohio St.3d at 97. In this case, appellants asserted that the class may contain 100,000 people. Thus, the numerosity requirement is clearly satisfied.
 {¶ 60} Fourth, there must be questions of law or fact common to the class. This commonality requirement simply requires a "common nucleus of operative facts" and is generally met without difficulty. Id., citingMarks v. C.P. Chemical Co. (1987), 31 Ohio St.3d 200, 202,509 N.E.2d 1249, and Miller, An Overview of Federal Class Actions: Past, Present and Future (2 Ed. 1977), at 24. Appellants satisfied this element. Common issues exist as to whether appellee's conduct was tortious and whether the emissions from the Sammis Plant were harmful.
 {¶ 61} Fifth, the claims or defenses of the representative parties must be typical of the claims or defenses of the class. "The typicality requirement has been found to be satisfied where there is no express conflict between the representatives and the class." Warner,36 Ohio St.3d at 98. Typicality does not require that all claims be identical.Baughman, 88 Ohio St.3d at 485. "`[A] plaintiff's claim is typical if it arises from the same event or practice or course of conduct that gives rise to the claims of other class members, and if his or her claims are based on the same legal theory. When it is alleged that the same unlawful conduct was directed at or affected both the named plaintiff and the class sought to be represented, the typicality *Page 13 
requirement is usually met irrespective of varying fact patterns which underlie individual claims.'" Id., quoting, 1 Newberg on Class Actions (3 Ed. 1992) 3-74 to 3-77, Section 3.13. In this case, Fowler's and Martin's claims are typical of the proposed class. The alleged unlawful conduct in this case is the release of harmful emissions affecting persons' health and property. This alleged unlawful conduct applies to both the named plaintiffs and the proposed class members.
 {¶ 62} Sixth, the representative parties must fairly and adequately protect the interests of the class. Under this element, both the named plaintiffs and the class counsel must be deemed adequate.Warner, 36 Ohio St.3d at 98. A representative is adequate if his interest is not antagonistic to that of other class members. Id. And counsel should be experienced in handling litigation of the type involved in the case. Id. In this case, there is no evidence or allegation that any conflict exists between the representatives and the proposed class members. Furthermore, there is no indication on the record or any allegations that counsel for the proposed class are inexperienced in actions of this type.
 {¶ 63} Seventh, appellants must meet one of the three Civ. R. 23(B) alternatives. Appellants asserted that they met Civ. R. 23(B)(2) and (3). We will examine each in turn.
 {¶ 64} Civ. R. 23(B)(2) contains two requirements: (1) the class action must seek primarily injunctive relief; and (2) the class must be cohesive. Wilson, 103 Ohio St.3d at ¶ 13. Appellants' complaint does not meet either of these requirements.
 {¶ 65} The trial court pointed out that there was no mention in appellants' complaint of court-supervised medical monitoring, which is common in injunctive relief class actions. Instead, appellants simply asked for appellee to fund the cost of medical monitoring needed by the class members. Additionally, the trial court found that while appellants listed injunctive relief as a remedy sought, their primary relief was for monetary damages.
 {¶ 66} "Certification under Civ. R. 23(B)(2) depends upon what type of relief is primarily sought, so where the injunctive relief is merely incidental to the primary *Page 14 
claim for money damages, Civ. R. 23(B)(2) certification is inappropriate." Id. at ¶ 17. In this case, while appellants requested medical monitoring they also requested both compensatory and punitive damages. This raises the inference that their claim for injunctive relief is merely incidental to their claim for monetary damages.
 {¶ 67} Additionally, in order for medical monitoring to be considered primarily injunctive, it should include court supervision and participation. Id. at ¶ 22. Appellants' complaint does not include this type of claim. Instead, appellants request that appellee fund the cost of medical monitoring needed by the class members. But there is no indication that this medical monitoring should include court supervision or participation.
 {¶ 68} In addition to not meeting the injunctive relief element of Civ. R. 23(B)(2), appellants cannot meet the cohesiveness requirement. The trial court found that the proposed class lacked the cohesiveness required by Civ. R. 23(B)(2). It reasoned that appellants had failed to demonstrate that common questions of law or fact predominated over questions affecting individual class members. The court noted that different types of injuries, lengths of exposure, varying medical expenses, and the disparate claims of those currently injured versus those who have yet to be injured affected the cohesiveness as it related to a medical monitoring claim.
 {¶ 69} In Amchem Products, Inc. v. Windsor (1997), 521 U.S. 591, 625,117 S.Ct. 2231, 138 L.Ed.2d 689, an asbestos case, the United States Supreme Court found the cohesiveness requirement could not be met due to the large number of individuals, their varying medical expenses, disparate claims of those currently injured individuals versus those who had not yet suffered injury, the plaintiffs' smoking histories, and family situations. Wilson, 103 Ohio St.3d at ¶ 27, citingAmchem, at 623-35.
 {¶ 70} And in Barnes v. Am. Tobacco Co. (C.A.3, 1998), 161 F.3d 127, a tobacco case, the federal court found a lack of cohesiveness where addiction, causation, the defenses of comparative and contributory negligence, the need for medical monitoring, and the statute of limitations presented too many individual *Page 15 
issues to permit certification. Wilson, at ¶ 28, citing Barnes, at 143.Barnes quoted Amchem noting that the plaintiffs "were `exposed to different * * * products, for different amounts of time, in different ways, and over different periods.'" Id., quoting Amchem, at 624.
 {¶ 71} Moreover, in Wilson, the Ohio Supreme Court found that the trial court did not abuse its discretion in finding the proposed class lacked cohesiveness when it gave detailed reasons in support of why individual questions dominated the case including: whether the defendant owed a duty, whether there was a breach of that duty, whether the statute-of-limitations defense applied, and questions of contributory negligence. Wilson, at ¶ 29. It also pointed out that members of the potential class spanned 46 years, multiple contractors, multiple locations within the defendant plant, and were estimated to number between four and seven thousand. Id.
 {¶ 72} This case bears numerous similarities to Amchem, Barnes, andWilson. In this case too, the trial court found that individual questions predominated over common questions. The court specifically noted the different types of injury, lengths of exposure, varying medical expenses, and disparate claims of those currently injured versus those who have yet to be injured. The court noted that different class members would benefit from different types and intensities of monitoring. Moreover, the court incorporated its predominance analysis where it pointed out that many individual questions would arise including: times of exposure, since the injuries allegedly occurred as a result of 11 different modifications over the course of 14 years; where the class members reside, as there is a great difference in proximity to the Sammis Plant; class members' exposure to emissions based on prevailing winds, which would affect proximate cause, existence, types of injury, and damages; and highly individualized questions regarding exposure pathway, alternative exposures, causation, assumption of the risk, length of exposure, health histories, and smoking histories.
 {¶ 73} Like the proposed class members in Amchem and Barnes, the proposed class members here were exposed to the Sammis emissions for different *Page 16 
amounts of time, in different ways, and over different periods. And factors such as the varying medical expenses, disparate claims of those currently injured individuals versus those who have not yet suffered any injury, and the plaintiffs' smoking histories would play a significant role in this case. The differences among proposed class members in this case simply outweigh the similarities. For this reason, the trial court did not abuse its discretion in finding that appellants did not meet the cohesiveness requirement of Civ. R. 23(B)(2).
 {¶ 74} Additionally, it should be noted that appellants argue that the trial court could not consider appellee's possible defenses as factors that created a lack of cohesiveness. But the Ohio Supreme Court cited to contributory negligence and statute-of-limitations defenses as valid reasons for why the trial court found a lack of cohesiveness inWilson, 103 Ohio St.3d at ¶ 29. Thus, the trial court was free to take appellee's defenses into consideration when determining whether the proposed class was cohesive.
 {¶ 75} Next, we must consider whether the trial court abused its discretion in finding that appellants failed to meet Civ. R. 23(B)(3). A Civ. R. 23(B)(3) action is often called a "damage" action.Warner, 36 Ohio St.3d at 95-96. It requires the trial court to find that: (1) common questions predominate over questions affecting only individual members; and (2) a class action is superior to other available methods for the fair and efficient adjudication of the controversy. Id. at 96. The focus is on whether the "efficiency and economy of common adjudication" offset the "difficulties and complexity of individual treatment of class members' claims." Id., quoting, Miller, An Overview of Federal Class Actions: Past, Present and Future (2 Ed. 1977), at 49.
 {¶ 76} In determining whether common questions of law or fact predominate over individual issues, it is not sufficient that common questions merely exist. Schmidt v. Avco Corp. (1984), 15 Ohio St.3d 310,313, 473 N.E.2d 822. Instead, the common questions must represent a significant aspect of the case and the questions must be able to be resolved for all class members in a single adjudication. Id. "`[A] claim will meet the predominance requirement when there exists generalized *Page 17 
evidence which proves or disproves an element on a simultaneous, class-wide basis, since such proof obviates the need to examine each class member's individual position.'" Cope v. Metro. Life Ins. Co.
(1998), 82 Ohio St.3d 426, 429-30, 696 N.E.2d 1001, quoting,Lockwood Motors, Inc. v. Gen. Motors Corp. (D.Minn. 1995),162 F.R.D. 569, 580.
 {¶ 77} The trial court found that questions common to the class would not predominate over questions affecting only individuals. For support, it pointed to the nature of the emissions. The court found that the type of harm alleged did not lend itself to a readily detectible link between injury and the emissions, which meant that there were more individual questions of fact than with other environmental torts. It pointed out that each individual plaintiff would have to establish proximate cause and damages. Additionally, the court observed that there would be individual questions as to times of exposure to the emissions since appellants claimed injuries stemming from 11 modifications to the Sammis Plant over a 14-year period. And it noted that further individualized questions were created by where each class member lived in relation to the Sammis Plant, the exposure pathway, alternative exposures, causation, assumption of the risk, length of exposure, health histories, and smoking histories.
 {¶ 78} The Ohio Supreme Court, quoting the United State Supreme Court's discussion of the predominance element in mass tort cases, stated:
 {¶ 79} "`Even mass tort cases arising from a common cause or disaster may, depending upon the circumstances, satisfy the predominance requirement. The Advisory Committee for the 1966 revision of Rule 23, it is true, noted that "mass accident" cases are likely to present "significant questions, not only of damages but of liability and defenses of liability, * * * affecting the individuals in different ways." Adv. Comm. Notes, 28 U.S.C. App. p. 697. And the Committee advised that such cases are "ordinarily not appropriate" for class treatment. Ibid. But the text of the Rule does not categorically exclude mass tort cases from class certification * * *. The Committee's warning, however, continues to call for caution when individual *Page 18 
stakes are high and disparities among class members great.'"Wilson, 103 Ohio St.3d at ¶ 26, quoting, Amchem, 521 U.S. at 625.
 {¶ 80} In light of these comments, the trial court did not abuse its discretion in determining that appellants did not meet the predominance requirement. Here, the disparities among class members are great as discussed in detail above. Furthermore, individual stakes may be high for some class members who allege that they have suffered pulmonary disease and other health issues as a result of exposure to the Sammis Plant emissions. For other class members, however, the stakes may be considerably lower if they simply allege property damage from the emissions. This further demonstrates the disparity among the potential class members. Moreover, the trial court gave an insightful and detailed analysis as to why appellants did not meet the predominance requirement. The trial court's decision was not in any way arbitrary, unreasonable, or unconscionable.
 {¶ 81} In order to meet Civ. R. 23(B)(3), the plaintiffs also had to demonstrate that a class action is a superior means of adjudication. In making this determination, "the court must make a comparative evaluation of the other procedures available to determine whether a class action is sufficiently effective to justify the expenditure of judicial time and energy involved therein." Schmidt, 15 Ohio St.3d at 313.
 {¶ 82} The trial court found that a class action would not be a superior means of adjudication of these claims because too many individualized questions of fact existed.
 {¶ 83} As discussed in detail above, there is an excessive number of individual issues in this case. Thus, it would be difficult to conclude that a class action would be a superior means of adjudication of the claims. And even if a class action was a superior means to adjudicate the claims, we still could not conclude that the trial court abused its discretion in denying class certification since appellants could not meet Civ. R. 23(B)(3)'s predominance requirement.
 {¶ 84} Accordingly, the trial court did not abuse its discretion in finding that appellants did not meet Civ. R. 23(B)(3). *Page 19 
 {¶ 85} For all of these reasons, appellants' first assignment of error is without merit.
 {¶ 86} Appellants' second assignment of error states:
 {¶ 87} "THE TRIAL COURT ERRED IN DENYING THE PLAINTIFFS' MOTION TO AMEND THE SECOND AMENDED COMPLAINT IN ITS ORDER FILED AUGUST 9, 2007."
 {¶ 88} On April 13, 2007, just days after the trial court entered judgment denying class certification, appellants filed a motion to amend their second amended complaint. Appellants wished to file a third amended complaint that changed their proposed class in an attempt to satisfy the trial court's concerns with its previously proposed and denied classes. The proposed class in their proposed third amended complaint would be defined as:
 {¶ 89} "All persons who reside in either Stratton, Ohio or Empire, Ohio, and who have been exposed to the increased emissions which originated from the W.H. Sammis Station owned by OHIO EDISON and located in Jefferson County, Ohio.
 {¶ 90} "The Class Members do not include the following persons or entities: Class Members who were represented by counsel at the time they executed a document in connection with a settlement of a claim, action, lawsuit or proceeding, pending or threatened, that released OHIO EDISON with respect to such Class Membership."
 {¶ 91} Appellants also limited their request for relief to an injunction for medical monitoring, eliminating their prayer for monetary damages. And they stated that they were entitled to class certification under only Civ. R. 23(B)(2), eliminating their request for certification under Civ. R. 23(B)(3).
 {¶ 92} Appellants contend that the trial court should have permitted them to amend their second amended complaint to include a class definition that would comply with the court's earlier judgment.
 {¶ 93} They first argue that the motion was timely and would not have prejudiced appellee. Appellants assert that they filed the motion to amend only after *Page 20 
limited discovery had taken place, which was limited to the certification of the class. They contend that no discovery had yet taken place on the merits of their claims.
 {¶ 94} Second, appellants argue that their motion to amend was not futile. They assert that the class proposed in the motion to amend was a valid, certifiable class and that the limitation of the proposed class was in response to the trial court's concerns.
 {¶ 95} Third, appellants contend that their proposed third amended complaint would have corrected any perceived problems with certification. Appellants assert that this class was identifiable through census records and is composed of 577 individuals.
 {¶ 96} Additionally, appellants contend that this proposed class satisfies the cohesiveness requirement. They contend that this proposed class directly addresses the trial court's stated concerns regarding cohesiveness. This proposed class, appellants argue, consists only of those residents of two towns that are directly adjacent to the Sammis Plant emission stacks. They assert that the distance from the stacks is effectively the same for each class member.
 {¶ 97} The grant or denial of a motion to amend a pleading is within the trial court's discretion. Turner v. Cent. Local School Dist. (1999),85 Ohio St.3d 95, 99, 706 N.E.2d 1261. Thus, we may only reverse such a decision if the trial court abuses that discretion.
 {¶ 98} Pursuant to Civ. R. 15(A), after a responsive pleading is served, a party may only amend his pleading by leave of court or by written consent of the adverse party. "Leave of court shall be freely given when justice so requires." Civ. R. 15(A). "The spirit of the Civil Rules is the resolution of cases upon their merits, not upon pleading deficiencies." Peterson v. Teodosio (1973), 34 Ohio St.2d 161, 175,297 N.E.2d 113. While the rule allows for liberal amendment, motions to amend should be refused if there is a showing of bad faith, undue delay, or undue prejudice to the opposing party. Turner v. Cent. Local SchoolDist. (1999), 85 Ohio St.3d 95, 99, 706 N.E.2d 1261. *Page 21 
 {¶ 99} In denying appellants' motion to amend, the trial court pointed out the following. Appellants filed their motion to amend 19 months after filing their original complaint. This is the third amendment sought by appellants. Appellants proposed, and the court considered, four alternative class definitions before denying their motion for certification.
 {¶ 100} The court found that filing a motion to amend 19 months after the filing of the original complaint was untimely. It further found that allowing appellants to amend their second amended complaint would result in undue prejudice to appellee since appellee had already defended against several unsuccessful proposed class definitions. Finally, the court found that appellants' motion to amend would be futile because the class proposed in appellants' third amended complaint would still not be certifiable. It reasoned that appellants' newly proposed class still was not identifiable because it would require the court to individually determine whether each potential class member had been exposed to Sammis emissions before including them in the class. Additionally, the court found that the newly proposed class still did not meet the Civ. R. 23(B)(2) cohesiveness requirement. It pointed out that although the newly proposed class was smaller and resided closer to the Sammis Plant, prior problems still existed including: different types of injuries, lengths of exposure, varying medical expenses, and the disparate claims of those currently injured versus those who have yet to be injured.
 {¶ 101} The trial court acted within its discretion in denying appellants' motion for leave to amend their second amended complaint. The trial court expressed three valid reasons for its denial: (1) untimeliness; (2) undue prejudice to appellee; and, perhaps most significantly, (3) the amendment would be a futile attempt to "fix" the proposed class definition.
 {¶ 102} Appellants' motion to amend their second amended complaint was not timely filed. It came 19 months after their initial complaint. Furthermore, it was only made after the trial court made a comprehensive determination that their proposed class was not certifiable. Appellants then attempted to change their proposed class *Page 22 
by taking the trial court's reasons for denial of certification and endeavoring to fix the flaws the trial court pointed out. In essence, appellants would like to use the court's judgment entry denying their proposed class as constructive criticism as to how to more artfully draft their newly proposed class.
 {¶ 103} Furthermore, appellee will likely be prejudiced if the trial court continually allows appellants to submit new proposed class definitions. Under this pattern, appellants could repeatedly modify their proposed class definition in an attempt to find a class definition that the trial court approves of. Appellee should not be forced to continue to spend time and resources defending against newly proposed class definitions.
 {¶ 104} Finally, as the trial court pointed out, several problems still remain with the class proposed in the third amended complaint, especially regarding cohesiveness. The class members still have varied health histories, the length and time of exposure is still widely varied, we still have no way of determining where the emissions travelled to, and the claims would still be widely disparate between those currently injured and those who have yet to be injured.
 {¶ 105} On these grounds, we cannot conclude that the trial court abused its discretion in denying appellants' motion to amend their second amended complaint. Accordingly, appellants' second assignment of error is without merit.
 {¶ 106} For the reasons stated above, the trial court's judgment is hereby affirmed.
Vukovich, J., concurs.
 Waite, J., concurs. *Page 1